Citation Nr: 1438781 
Decision Date: 08/29/14 Archive Date: 09/03/14

DOCKET NO. 08-26 254 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in 
St. Petersburg, Florida


THE ISSUES

1. Entitlement to an initial disability rating in excess of 30 percent for posttraumatic stress disorder (PTSD), prior to August 27, 2012, and in excess of 50 percent thereafter.

2. Entitlement to a total rating based on individual unemployability due to a service-connected disabilities (TDIU).


REPRESENTATION

Appellant represented by: The American Legion


ATTORNEY FOR THE BOARD

A. Martinez, Associate Counsel

INTRODUCTION

The Veteran served on active duty from June 1969 to May 1971.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a November 2007 rating decision by the Department of Veterans Affairs (VA) Regional Office (RO) in St. Petersburg, Florida, which granted service connection and assigned an initial 10 percent rating for PTSD, effective June 1, 2007.

In an August 2008 rating decision, the RO increased the rating to 30 percent, effective June 1, 2007. By a May 2013 rating decision, the evaluation was increased to 50 percent, effective August 27, 2012. Notwithstanding these increases, the Veteran's appeal remains before the Board. AB v. Brown, 6 Vet. App. 35 (1993). 

The Board previously remanded the case in June 2012 for further development. The mandates of the remand have been substantially met with regard to the PTSD claim. See Stegall v. West, 11 Vet. App. 268(1998).

The issue of entitlement to a TDIU is addressed in the REMAND portion of the decision below and is REMANDED to the Agency of Original Jurisdiction (AOJ).


FINDING OF FACT

Throughout the period on appeal, the Veteran's PTSD has most nearly approximated occupational and social impairment with reduced reliability and productivity due to an overall disability picture which includes irritability or outbursts of anger, depressed mood, a restricted range of affect, hypervigilance, avoidance, and feelings of detachment and estrangement from others, anxiety, and panic attacks, and is indicative of a difficulty in establishing and maintaining effective work and social relationships. 


CONCLUSION OF LAW

The criteria for an initial rating of 50 percent, but not higher, for PTSD are met for the entire appeal period. 38 U.S.C.A. § 1155; 38 C.F.R. § 4.130, Diagnostic Code (DC) 9411.


REASONS AND BASES FOR FINDING AND CONCLUSION

I. Duties to Notify and Assist

VA has duties to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126; 38 C.F.R. §§ 3.102, 3.156(a), 3.159 and 3.326(a). See also Pelegrini v. Principi, 18 Vet. App. 112 (2004); Quartuccio v. Principi, 16 Vet. App. 183 (2002); Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006); Dingess v. Nicholson, 19 Vet. App. 473 (2006). 

This appeal arises from disagreement with the initial evaluation following the grant of service connection. Once service connection is granted, the claim is substantiated, additional notice is not required, and any defect in the notice is not prejudicial. Hartman v. Nicholson, 483 F.3d 1311 (Fed. Cir. 2007); Dunlap v. Nicholson, 21 Vet. App. 112 (2007). Thus, the Board finds that VA has complied with its duty to notify. 

The Board also finds that the duty to assist requirement has been fulfilled. All relevant, identified, and available evidence has been obtained; specifically, the Veteran's medical treatment records are in the file. Private treatment and Social Security Administration (SSA) records have also been obtained and associated with the file. The Veteran has not referred to any additional existing evidence that is necessary for a fair adjudication of the claims which has not been obtained. In March 2013, he stated he had no more evidence to submit. 

The Veteran underwent VA examinations to evaluate his PTSD during the course of the appeal. These examinations are adequate; they involved a review of the claims file, thorough examination of the Veteran, and supporting rationales. See Barr v. Nicholson, 21 Vet. App. 303, 311 (2007); Stefl v. Nicholson, 21 Vet. App. 120, 124 (2007); see also Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 301 (2008).

III. Increased Rating

The Veteran filed a claim for service connection for PTSD on June 2007. It was granted in a November 2007 rating decision-effective June 1, 2007, and an initial 10 percent rating was assigned under 38 C.F.R. § 4.71a, Diagnostic Code (DC) 9411. The Veteran's disability rating was subsequently increased to 30 percent prior to August 27, 2012, and 50 percent disabling thereafter. The Veteran claims that a higher rating is warranted. 

Disability ratings are determined by applying the criteria set forth in the VA Schedule for Rating Disabilities (Rating Schedule) and are intended to represent the average impairment of earning capacity resulting from disability. 38 U.S.C.A. § 1155; 38 C.F.R. § 4.1. Separate DCs identify the various disabilities. Disabilities must be reviewed in relation to their history. 38 C.F.R. § 4.1. Other applicable, general policy considerations are: interpreting reports of examination in light of the whole recorded history and reconciling the various reports into a consistent picture so that the current rating may accurately reflect the elements of disability, 38 C.F.R. § 4.2; resolving any reasonable doubt regarding the degree of disability in favor of the claimant, 38 C.F.R. § 4.3; assigning a higher of two evaluations where there is a question as to which of two evaluations apply and the disability picture more nearly approximates the criteria for the next higher rating, 38 C.F.R. § 4.7; and evaluating functional impairment on the basis of lack of usefulness and the effects of the disability upon the person's ordinary activity, 38 C.F.R. § 4.10. See Schafrath v. Derwinski, 1 Vet. App. 589 (1991).

Where entitlement to compensation has already been established and an increase in the disability rating is at issue, the present level of disability is of primary concern. VA must assess the level of disability from the date of initial application for service connection and determine whether the level of disability warrants the assignment of different disability ratings at different times over the life of the claim, a practice known as a "staged rating." See Fenderson v. West, 12 Vet. App 119 (1999). The analysis in this decision therefore considers the possibility that staged ratings may be warranted.

Although all the evidence has been reviewed in this case, only the most relevant and salient evidence is discussed below. Gonzales v. West, 218 F.3d 1378 (Fed. Cir. 2000).

Under Diagnostic Code 9411, the General Rating Formula for Mental disorders is used. The General Rating Formula provides that a 30 percent rating is warranted when the mental disorder is manifested by occupational and social impairment with an occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks (although generally functioning satisfactorily, with routine behavior, self-care, and conversation normal), due to such symptoms as depressed mood; anxiety; suspiciousness; panic attacks (weekly or less often); chronic sleep impairment; and mild memory loss (such as forgetting names, directions, and recent events). 38 C.F.R. § 4.130, Diagnostic Code 9411.

A 50 percent rating is warranted for occupational and social impairment with reduced reliability and productivity due to such symptoms as: flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short- and long-term memory (e.g., retention of only highly learned material, forgetting to compete tasks); impaired judgment; impaired abstract thinking; disturbances of motivation and mood; difficulty in establishing and maintaining effective work and social relationships. Id.

A 70 percent evaluation is warranted for occupational and social impairment with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to such symptoms as: suicidal ideation; obsessional rituals which interfere with routine actives; speech intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately and effectively; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a work-like setting); inability to establish and maintain effective relationships. Id.

Finally, a maximum 100 percent evaluation is warranted for total occupational and social impairment, due to such symptoms as: gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time or place; memory loss for names of close relatives, own occupation, or own name. Id.

When determining the appropriate disability evaluation to assign, the Board's primary consideration is a veteran's symptoms, but it must also make findings as to how those symptoms impact a veteran's occupational and social impairment. Vazquez-Claudio v. Shinseki, 713 F.3d 112(Fed. Cir. 2013); Mauerhan v. Principi, 16 Vet. App. 436, (2002). Because the use of the term "such as" in the rating criteria demonstrates that the symptoms after that phrase are not intended to constitute an exhaustive list, the Board need not find the presence of all, most, or even some, of the enumerated symptoms to award a specific rating. Id. at 442; see also Sellers v. Principi, 372 F.3d 1318(Fed. Cir. 2004). Nevertheless, all ratings in the general rating formula are also associated with objectively observable symptomatology and the plain language of the regulation makes it clear that the veteran's impairment must be "due to" those symptoms. A veteran may only qualify for a given disability rating by demonstrating the particular symptoms associated with that percentage, or others of similar severity, frequency, and duration. Vazquez-Claudio, 713 F.3d at 118 . 

Psychiatric examinations frequently include assignment of a GAF score, which is defined by DSM-IV as number between zero and 100 percent, that represents the psychological, social, and occupational functioning of an individual on a hypothetical continuum of mental health illness. Higher scores correspond to better functioning of the individual. The GAF score and the interpretations of the score are important considerations in rating a psychiatric disability. See, e.g., Richard v. Brown, 9 Vet. App. 266, 267 (1996); Carpenter v. Brown, 8 Vet. App. 240 (1995). However, the GAF scores assigned in a case, like an examiner's assessment of the severity of a condition, are not dispositive of the rating issue; rather, the GAF score must be considered in light of the actual symptoms of the Veteran's disorder, which provide the primary basis for the rating assigned. See 38 C.F.R. § 4.126(a).

A GAF score of 31 to 40 reflects some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up other children, is defiant at home, and is failing at school). A GAF of 41 to 50 is defined as serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifter) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). A GAF score of 51 to 60 is defined as moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). A GAF of 61 to 70 is defined as some mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful relationships. See Diagnostic and Statistical Manual of Mental Disorders (4th ed. 1994).

The Board is precluded from differentiating between symptomatology attributed to a non-service connected disability and a service-connected disability in the absence of medical evidence which does so. Mittleider v. West, 11 Vet. App. 181, 182 (1998). The record includes multiple psychiatric diagnoses. In analyzing the claim, the Board will attribute all the Veteran's psychiatric symptoms to his service-connected PTSD absent medical evidence which precludes it.

Here, the relevant evidence includes VA examinations and private evaluations, as well as medical treatment records.

The Veteran underwent a private psychological evaluation by Dr. A. in April 2007 which resulted in diagnoses of PTSD, panic disorder without agoraphobia, and depressive disorder NOS (Not Otherwise Specified). The Veteran reported intrusive thoughts, difficulty with emotional control, dissociated memory, social distancing, estranged relationships, anger and irritability, short-term and long-term memory problems, and anxiety attacks "once every couple of weeks." He denied a suicidal ideation. The Veteran further reported that he typically felt "pretty happy," but also described periods of "feeling down." Dr. A. noted that the Veteran presented with a number of assets, most notably his relationships with his wife and children, who comprised his primary support system. Dr. A. further noted a restricted range of affect, hypervigilance, and an exaggerated startle. On mental status examination, Dr. A. found that the Veteran was oriented to all spheres. He displayed normal speech, normal thought content, a normal affect which was stable and appropriate, and no suicide or homicide intent. Dr. A. found that the Veteran's memory skills "appeared to fall below normal limits," and he displayed passive suicidal ideation, impaired judgment, difficulties with mood, and intermittent panic attacks. Dr. A. assigned the Veteran a GAF score of 47.

At a November 2007 VA examination, the Veteran was diagnosed with PTSD with panic attacks. The examiner noted that he did not meet the criteria for major depression at the interview. The Veteran reported panic attacks, trouble with his temper daily (irritability or outbursts of anger), difficulty concentrating, and trouble sleeping nightly. He further reported that he had been married for 34 years, and is close with his wife, two daughters, and five grandchildren and has a number of close friends. On psychological examination, the examiner found that the Veteran was able to maintain minimum personal hygiene, and he was oriented to all spheres; he displayed normal speech, affect, thought processes, thought content, and insight, an intact judgment, and he displayed no delusions, homicidal or suicidal thoughts, or obsessive, ritualistic behavior. The examiner found that the Veteran displayed an anxious mood, sleep impairment, panic attacks, a mildly impaired recent memory, difficulty concentrating, and irritability. The examiner found no deficiencies in most areas resulting from PTSD signs and symptoms, reduced reliability and productivity due to PTSD symptoms, or occasional decrease in work efficiency or intermittent periods of inability to perform occupational tasks due to PTSD signs and symptoms. The examiner characterized the Veteran's PTSD signs and symptoms as transient or mild and decreased work efficiency and his ability to perform occupational tasks only during periods of significant stress. The examiner assigned the Veteran a GAF score of 65. 

The Veteran underwent a private psychological evaluation by Dr. A. in January 2008. He was diagnosed with PTSD, panic disorder without agoraphobia, and depressive disorder NOS. The Veteran reported anger and irritability problems, experiencing problems with immediate and short-term memory, anxiety attacks occurring once every 1-2 weeks, and a marked pattern of social isolation and estrangement. He denied a suicidal ideation. Dr. A. noted hypervigilance, an exaggerated startle, passive suicidal ideation and homicidal ideation in that the Veteran stated that "a couple of different times [he] could have killed someone." On mental status examination, Dr. A. found that the Veteran was oriented to all spheres. He displayed an unusually soft and slow speech but with normal content, his remote memory was normal, and he denied perceptual abnormalities. Dr. A. noted that although the Veteran displayed passive suicidal ideation and homicidal ideation, means, plans, specific time frames, and immediate intent were all denied. Dr. A. found that the Veteran's impulse control was below normal limits, his mood was "down," his concentration and attention capacities as well as his immediate memory skills were below normal, his judgment and insight appeared to fall below normal limits, and his affect was blunted but stable. Dr. A. assigned a GAF score of 39, based on the presence of difficulties in multiple arenas, including those associated with social and employment functioning; specifically, the Veteran's reports of a pattern of social isolation and estrangement. Dr. A. concluded that the Veteran is unemployable and represents a threat to any work environment, given his history of difficulties with anger outburst and irritability. Treatment is unlikely to improve the Veteran's overall presentation significantly, and he is likely to remain symptomatic for the remainder of his life.

An October 2008 psychological report by Dr. O. -which included a review of Dr. A.'s April 2007 examination report-reflects that the Veteran reported anxiety, nightmares, symptoms of night terrors, irritability, and anger symptoms, but he denied suicidal ideations. He was diagnosed with chronic and severe PTSD. Dr. O. observed that the Veteran manifested symptoms of emotional numbing and constriction, and Dr. O. further noted the Veteran's reports of a previous marital separation due to his emotional extremes as well as his acknowledgement that his psychological impairments result in his diminished capacity to relate to his wife effectively be emotionally demonstrative. On psychological testing, the Veteran displayed symptoms of depression with cognitive impairment, psychomotor retardation, somatic complaints, self-alienation, social alienation, bizarre sensory experiences, lack of ego strength, and a restricted range of affect. Dr. O. noted that the Veteran's anxiety symptoms result in virtual social isolation outside of his nuclear family and one friend, as well as shallowness of depth and acquisition of meaningful interpersonal relationships. Dr. O. concluded that the Veteran appeared to be markedly impaired in his capacity to work or perform in coordination of others without manifesting disruptive psychological symptoms, and assigned the Veteran a GAF score of 43 based on the Veteran's display of cognitive, emotional and behavioral disruptions secondary to his primary diagnosis of PTSD. 

In a February 2009 VA examination, the Veteran was diagnosed with PTSD and depressive disorder, NOS; the examiner indicated that there is an overlap between the symptoms of these conditions. At the examination, the Veteran reported depressed mood, irritability, anger, memory and concentration problems, sleep impairment, infrequent panic attacks, and anxiety attacks occurring several times per month. He further reported that he remained married to his wife of 35 years, with whom he argues a lot but has a fair relationship and marriage, and he sees his daughters occasionally and has fair relationships with them. On psychological examination, the examiner noted that the Veteran displayed normal psychomotor activity, soft or whispered speech, normal thought process, no delusions, no judgment or insight problems, no hallucinations, no suicidal or homicidal thoughts, a fair impulse control, and normal remote and immediate memory. The examiner found that the Veteran had a constricted affect, depressed mood, occasional intrusive thoughts, sleep impairment, an example of obsessive or ritualistic behavior that did not affect his ability to perform daily activity, panic attacks occurring 4-6 times per year, a mildly impaired recent memory and an exaggerated startle response. The examiner concluded that the Veteran's PTSD and symptoms result in deficiencies in thinking, family relations, and mood. In addition, the Veteran displayed reduced reliability and productivity due to PTSD symptoms, because the Veteran described a persistent diminished interest and motivation with procrastination; although he does get tasks completed, he is less efficient and less reliable; he does not volunteer for tasks or to help others anymore; and, he has become more withdrawn, wants to avoid arguments and therefore avoids others. The examiner assigned a GAF score of 55, noting that the Veteran experiences a moderate level of PTSD and co-morbid depression. The examiner noted that while the Veteran's symptoms appear to have "worsened some", he did not appear to experience severe symptoms and level of impairment in functioning typically associated with GAF scores in the range of 49-30. The Veteran described being able to carry out basic daily activities but with reduced efficiency and reliability due to procrastination and diminished interest. The examiner characterized the Veteran's level of symptoms as "moderate" and indicated that the Veteran had a fair prognosis for improvement with treatment. The examiner also pointed out that GAF scores can and do fluctuate over time. 

The Veteran underwent a March 2012 VA psychiatric evaluation. He was diagnosed with PTSD and major depressive disorder; psychosis NOS was ruled out. The Veteran reported experiencing a depressed mood, lack of motivation, difficulty concentrating, fatigue, insomnia, passive suicidal thoughts, anger problems, subjective memory problems, visual illusions (shadows in the visual periphery), generalized anxiety, panic attacks nearly every week, and nightmares; but, no social anxiety, obsessions or compulsions, or a history of suicide attempts. The Veteran also reported being married to his first spouse for about 40 years and that the relationship is stable, and he indicated that he has two adult daughters with whom he keeps in touch. Upon examination, the Veteran was grossly alert and oriented, his hygiene, memory, insight, and judgment were intact, and he displayed speech that was clear and normal in volume, rate, and production, a constricted affect, mildly dysphoric mood, logical and goal oriented thought, thought content that was free of paranoia and unusual preoccupations, no suicidal or homicidal ideation, and no perceptual abnormalities. The VA psychiatrist assigned him a GAF score of 55.

Pursuant to the Board's remand, the Veteran underwent a VA examination in August 2012 after which he was diagnosed with PTSD and depression, NOS. The Veteran reported being married to his wife of 39 years and that the relationship is tolerable, and he indicated that he has two adult children with whom he has average relationships. He stated that he has no close friendships and lost contact with friends. In addition, the Veteran reported that he stopped working and retired in 2005 when he was diagnosed and treated for pancreatic cancer; he has not attempted to work since 2005 because of an inability to work as a result of pancreatic cancer recovery, and he has difficulties in working as a result of anger management difficulties. The examiner found that the Veteran displayed a restricted range of affect, sleep difficulties, irritability or outbursts of anger, hypervigilance, exaggerated startle, depressed mood, anxiety, suspiciousness, panic attacks that occurred weekly or less often, chronic sleep impairment, mild memory loss, disturbances of motivation and mood, difficulty establishing and maintaining effective work and social relationships, difficulty in adapting to stressful circumstances including work, and an inability to establish and maintain effect relationships. The Veteran did not display near-continuous panic or depression, memory impairment, flattened affect, abnormal speech, difficulty in understanding complex commands, impaired judgment or abstract thinking, suicidal ideation, obsessive rituals, impaired impulse control, spatial disorientation, persistent delusions or hallucinations, neglect of personal appearance and hygiene, or disorientation to time or place. The examiner found that the Veteran displayed occupational and social impairment with reduced reliability and productivity. The examiner assigned a GAF score of 55.

The Veteran has also been treated intermittently for his psychiatric symptoms. VA treatment notes from the relevant period on appeal reflect that the Veteran has displayed a depressed mood, restricted range of affect, hypervigilance, anxiety, panic attacks, irritability, anger, and poor sleep; but, no suicidal or homicidal ideations, and with consistent orientation on all spheres. Several treatment notes reflect that the Veteran reported episodic, sometimes weekly or daily, visual hallucinations/illusions which he describes as shadowy figures out of his peripheral vision. In February 2012 he was diagnosed with depression with psychotic features and given a GAF score of 44. Later in February 2012 he was diagnosed with PTSD and major depressive disorder, recurrent with psychotic features and given a GAF score of 50. In March 2012 he was again diagnosed with PTSD and major depressive disorder, recurrent with psychotic features and given a GAF score of 50. In May 2012 he was diagnosed with PTSD and major depressive disorder-psychosis NOS was ruled out-and given a GAF score of 55. In June 2012 the Veteran reported that he keeps in touch with his wife, children, and grandchildren. He was diagnosed with PTSD and major depressive disorder-psychosis NOS was ruled out; a GAF score of 55 was assigned. Again in June 2012 he was diagnosed with PTSD and major depressive disorder-psychosis NOS was ruled out-and assigned a GAF score of 55. In August 2012 the Veteran reported that he keeps in touch with his wife, children, and grandchildren; he was diagnosed PTSD and major depressive disorder-psychosis NOS was ruled out by history-and assigned a GAF score of 50. Again, in November 2012 the Veteran reported that he keeps in touch with his wife, children, and grandchildren; he was diagnosed PTSD and major depressive disorder-psychosis NOS was ruled out by history-and assigned a GAF score of 50. 

Considering all of the evidence in light of the criteria noted above and taking into account the Veteran's overall disability picture, the Board finds that that the evidence is at least in relative equipoise on the question of whether the Veteran's PTSD symptoms more nearly approximate the criteria for the next higher 50 percent disability rating prior to August 27, 2012; and the totality of the evidence reflects that the Veteran's PTSD warrants no higher than a 50 percent rating for all periods under consideration.

While the Board is cognizant that the evidence shows incidental reports of normal affect, no panic attacks, normal speech, appropriate abstract thinking, and normal memory, the record shows that the Veteran has consistently displayed an overall disability picture which includes irritability or outbursts of anger, depressed mood, a restricted range of affect, hypervigilance, avoidance, and feelings of detachment and estrangement from others, anxiety, and panic attacks, and is indicative of a difficulty in establishing and maintaining effective work and social relationships. The Veteran's PTSD produces clinically significant distress or impairment in social, occupational, or other important areas of functioning and is indicative of occupational and social impairment with reduced reliability and productivity. 

Furthermore, the Board has considered all of the Veteran's GAF scores-ranging from 39 to 55. Although the record reflects one instance in which the Veteran was assigned a GAF score of 39, his overall symptomatology, prior and subsequent instances of consistent, higher GAF scores, and reports-including his statements regarding the continuity of his familial relationships, described as close, fair, stable, tolerable, and average-weigh against a finding of severe symptoms, impairment in reality testing or communication or major impairment in several areas associated with a GAF score in the 31-40 range. Accordingly, the Board finds that, overall and together with the other evidence on the Veteran's whole disability picture, the Veteran's GAF scores weigh in favor of a finding of moderate psychiatric symptoms associated with a 50 percent rating throughout the period on appeal. 

The totality of the evidence weighs against a finding that the Veteran's PTSD symptomatology met the criteria for a rating in excess of 50 percent at any time during the course of the appeal. Although the Board recognizes that the evidence reveals a single instance when the Veteran was found to have difficulty in adapting to stressful circumstances and an inability to establish and maintain effective relationships, two notations of occupational and social impairment with deficiencies in most areas, and a medical conclusion that the Veteran is unemployable and represents a threat to any work environment, the Board finds that evidence of these criteria alone does not necessarily demonstrate that the overall symptomatology or overall impairment due to PTSD more nearly approximates the criteria for a 70 percent rating. Indeed, the Board does not find that the Veteran displayed suicidal ideation, obsessional rituals that interfere with routine activities, illogical or obscure speech, near-continuous panic or depression, impaired impulse control, spatial disorientation, or a neglect of personal appearance and hygiene. Although the absence of these symptoms is not outcome determinative, the Veteran's overall disability picture-reflected in the manifested symptomatology and GAF scores described above-does not include symptoms of similar severity, frequency, and duration such that his occupational and social impairment warrants assignment of a rating in excess of 50 percent. See Vazquez-Claudio, 713 F.3d at 112. 

Accordingly, the Veteran's PTSD warrants an initial 50 percent disability rating for all periods under consideration.

In deciding the Veteran's increased rating claim, the Board has considered whether the Veteran is entitled to an increased evaluation for separate periods based on the facts found during the appeal period. The evidence of record supports the conclusion that the Veteran is not entitled to additional increased compensation at any time within the appeal period.

In reaching these determinations, the Board has considered the Veteran's statements in support of his claim, which assert that a higher disability rating is warranted. In this regard, the Veteran is competent to report on factual matters of which he has first-hand knowledge. See Washington v. Nicholson, 19 Vet. App. 362, 368 (2005). However, while the Board may consider the Veteran's subjective statements regarding the severity of his disability, the Board notes that with respect to the Rating Schedule, the criteria set forth therein generally require medical expertise which the Veteran has not been shown to have. See King v. Shinseki, 700 F.3d 1339, 1344 (Fed. Cir. 2012). Accordingly, the Board finds the objective medical findings provided by the experts of record should be accorded the greater probative weight. See Guerrieri v. Brown, 4 Vet. App. 467, 473 (1993). 

Furthermore, the discussion above reflects that the rating criteria reasonably describes and contemplates the severity and symptomatology of the Veteran's service-connected PTSD. The Veteran's PTSD is manifested by impairment in social and occupational functioning. The Board has applied the benefit of the doubt under Mittleider and considered the effect of all psychiatric symptoms. The rating criteria contemplate these impairments; therefore, referral for consideration of an extraschedular rating is not warranted. Thun v. Peake, 22 Vet. App. 111 (2008).

For the foregoing reasons, the Board finds that an initial rating of 50 percent for PTSD is warranted.

ORDER

An initial rating for PTSD of 50 percent, but not higher, is granted for the entire appeal period, subject to the laws and regulations governing the award of monetary benefits.


REMAND

Further development is required prior to adjudicating the Veteran's TDIU claim. In June 2012, the Board remanded the case to obtain a medical opinion on the effect of the Veteran's service-connected disabilities (generalized folliculitis with secondary dermatitis and PTSD) on his ability to work. 

The August 2012 psychologist examiner provided a negative opinion on whether the Veteran's PTSD renders him unable to secure or follow a substantially gainful occupation, but did not provide a sufficient rationale. The examiner referred to the Veteran's self-report that he has not attempted to work since he retired in 2005 because of the debilitating effects of his treatment and recovery from pancreatic cancer and his feeling that anger management issues would "create difficulties" in a work environment. Beyond noting the Veteran's reference to anger management, the psychologist examiner did not provide any additional comment. The "opinion" is a recitation of facts, with an unexplained opinion. On remand, the psychologist examiner should provide a supporting rationale, including commenting on the Veteran's statements regarding his PTSD symptomatology.

Finally, the Veteran was recently service-connected for bilateral hearing loss and tinnitus. A June 2013 provides an insufficient opinion on the impact of these disabilities on the Veteran's ability to secure or follow a substantially gainful occupation. On remand, an addendum opinion must be obtained.

Accordingly, the case is REMANDED for the following action:

1. Return the Veteran's claims file to the examiner who conducted the Veteran's August 2012 VA medical examination, or to a qualified medical professional if the examiner is unavailable, to provide an addendum opinion. All pertinent medical records should be made available to the VA examiner for review. Any indicated evaluations, studies, and tests deemed to be necessary by the examiner should be accomplished. If the examiner determines that the requested opinion cannot be provided without an examination, one should be scheduled.

The examiner is asked to provide an opinion on whether the Veteran's service-connected PTSD, either singly or together with his service-connected folliculitis, hearing loss and tinnitus, and in light of his education and occupational history, affects his ability to secure or follow a substantially gainful occupation. 

2. Return the Veteran's claims file to the examiner who conducted the Veteran's June 2013 VA medical examination, or to a qualified medical professional if the examiner is unavailable, to provide an addendum opinion. All pertinent medical records should be made available to the VA examiner for review. Any indicated evaluations, studies, and tests deemed to be necessary by the examiner should be accomplished. If the examiner determines that the requested opinion cannot be provided without an examination, one should be scheduled.

The examiner is requested to provide an opinion as to whether the Veteran's service-connected bilateral hearing loss and tinnitus, either singly or taken together with his service-connected PTSD and folliculitis, and in light of his education and occupational history, affects his ability to secure or follow a substantially gainful occupation 

Detailed rationale is requested for the opinion provided. 

3. Upon completion of the above, readjudicate the Veteran's claim. If the benefit sought on appeal remains denied, issue the Veteran a supplemental statement of the case and provide the Veteran an opportunity to respond.

The appellant has the right to submit additional evidence and argument on the matter the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West Supp. 2013).




______________________________________________
M. E. LARKIN
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs