Citation Nr: 1528186 
Decision Date: 06/30/15 Archive Date: 07/09/15

DOCKET NO. 14-17 141 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in St. Louis, Missouri


THE ISSUE

Entitlement to a total disability rating based on individual unemployability (TDIU) prior to September 15, 2014.


REPRESENTATION

Appellant represented by: Missouri Veterans Commission


ATTORNEY FOR THE BOARD

William Skowronski, Associate Counsel



INTRODUCTION

The Veteran served on active duty from January 1943 to March 1946, so during World War II.

This appeal to the Board of Veterans' Appeals (Board) is from an October 2012 rating decision by the Department of Veterans Affairs (VA) Regional Office (RO). 

In July 2014, the Board remanded the claim to the RO via the Appeals Management Center (AMC) for further development and consideration, including especially to obtain outstanding VA treatment records and to have the Veteran reexamined to reassess the severity of his bilateral hearing loss and tinnitus. His VA treatment records since have been obtained and associated with the claims file, so they may be considered, and he had the additional audiological evaluation in September 2014. 

In an October 2014 rating decision since issued, on remand, the AMC assigned the maximum possible 100 percent rating for his bilateral hearing loss retroactively effective from September 15, 2014, coinciding with the date of the audiological evaluation mentioned showing this greater level of hearing impairment. As well, the AMC granted Special Monthly Compensation (SMC) under 38 U.S.C.A. § 114(k) and 38 C.F.R. § 3.350(a) based on loss of use of hearing and basic eligibility for Dependents' Educational Assistance (DEA), both retroactively effective as of that same date - September 15, 2014.

The United States Court of Appeals for Veterans Claims (Court/CAVC) has held that a 100 percent schedular rating under the Schedule for Rating Disabilities means that a Veteran is totally disabled. See Holland v. Brown, 6 Vet. App. 443, 446 (1994) (citing Swan v. Derwinski, 1 Vet. App. 20, 22 (1990)). Thus, if VA has found a Veteran to be totally disabled as a result of a particular service-connected disability or combination of disabilities pursuant to the Rating Schedule, there is no need, and no authority, to otherwise rate that Veteran totally disabled on any other basis. See Herlehy v. Principi, 15 Vet. App. 33, 35 (2001) (finding request for a TDIU moot where 100 percent schedular rating was awarded for the same period). 

The Court subsequently has held, however, that the award of a 100 percent disability rating does not render moot a claim of entitlement to a TDIU. See Bradley v. Peake, 22 Vet. App. 280 (2008). In Bradley, the Court determined that a separate TDIU predicated on one disability (although perhaps not ratable at the schedular 100-percent level) when considered together with another disability separately rated at 60 percent or more could warrant SMC under 38 U.S.C.A. § 1114(s). Thus, the Court reasoned, it might benefit the Veteran to retain or obtain the TDIU even where a 100 percent schedular rating also has been granted. Bradley, at 293-94. Because of this holding, VA's General Counsel withdrew VAOPGCPREC 6-99, which was contrary to the holding of Bradley. See 75 Fed. Reg. 11229 -04 (March 10, 2010). Indeed, as noted in Bradley, VA must consider a TDIU claim despite the existence of a schedular total rating and award SMC under 38 U.S.C.A. § 1114(s) if VA finds the separate disability supports a TDIU independent of the other 100 percent disability rating. See id. 

Subsection 1114(s) requires that a disabled Veteran whose disability level is determined by the ratings schedule must have at least one disability that is rated at 100 percent in order to qualify for the SMC provided by that statute. The Court declared, however, if a Veteran were awarded a TDIU based on multiple underlying disabilities and then later receives a schedular disability rating for a single, separate disability that would, by itself, create the basis for an award of a TDIU, that the order of the awards was not relevant to the inquiry as to whether any of the disabilities alone would render him unemployable and thus entitled to a TDIU based on that condition alone. Buie v. Shinseki, 24 Vet. App. 242, 250 (2010).

Here, service connection is in effect for bilateral hearing loss, which, as mentioned, has been rated as 100-percent disabling effectively since September 15, 2014, and for tinnitus, which instead has been rated as 10-percent disabling effectively since December 23, 2010. This is the maximum possible schedular rating for tinnitus, incidentally. See Smith v. Nicholson, 451 F.3d 1344 (Fed. Cir. 2006). But in light of Buie and Bradley, and VA's obligation to maximize the Veteran's benefits, VA must determine whether he meets the criteria for a TDIU based on the impact of his tinnitus. There is no such suggestion or indication his tinnitus alone, however, meets the TDIU criteria. 38 C.F.R. § 4.16(a). So the granting of the 
100-percent schedular rating for his bilateral hearing loss renders moot any claimed entitlement to a TDIU as of September 15, 2014. The Board therefore is only considering whether he was entitled to a TDIU prior to that date when his 100 percent schedular rating for his bilateral hearing loss took effect.

An additional statement from the Veteran (on a formal application for a TDIU) has been associated with the claims file since the RO or AMC last adjudicated this claim. But see BVA Fast Letter 14-02 (setting forth that a waiver of initial Agency of Original Jurisdiction (AOJ) review will not be required for 
newly-received evidence for claims appealed on or after February 2, 2013, unless the claimant or claimant's representative request in writing that the AOJ initially review such evidence).

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c). 38 U.S.C.A. § 7107(a)(2) (West 2014).


FINDING OF FACT

Prior to September 15, 2014, the Veteran was not incapable of obtaining and maintaining substantially gainful employment because of his service-connected disabilities.


CONCLUSION OF LAW

For this earlier period at issue, prior to September 15, 2014, the criteria are not met for a TDIU. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107(b) (West 2014); 38 C.F.R. §§ 3.102, 3.340, 3.341, 4.15, 4.16, 4.18, 4.19 (2014).



REASONS AND BASES FOR FINDING AND CONCLUSION

I. The Duties to Notify and Assist

Under the Veterans Claims Assistance Act (VCAA), when VA receives a complete or substantially complete application for benefits, it must notify the claimant of the information and evidence not of record that is necessary to substantiate the claim, including apprising him of the information and evidence VA will obtain versus the information and evidence he is expected to provide. 38 C.F.R. § 3.159 (2014). 

The Veteran was provided this required notice and information for establishing his entitlement to a TDIU in a July 2012 letter, prior to the initial adjudication of his claim in the October 2012 rating decision at issue, so in the preferred sequence. Pelegrini v. Principi, 18 Vet. App. 112, 120-21 (2004) (Pelegrini II). Therefore, VA has satisfied its duty to notify him concerning this claim. 

VA also has a duty to assist the Veteran with this claim by obtaining all potentially relevant records and providing an examination or obtaining a medical opinion when needed to assist in making a decision on the claim. Here, to satisfy this additional obligation, the Veteran's service treatment records (STRs) and post-service private and VA records have been obtained and associated with the claims file for consideration. And as already alluded to, some of the additional VA treatment records were obtained following and as a direct result of the Board remanding this claim in July 2014.

Also as directed in the Board's remand, he was afforded a VA examination for his TDIU claim, also previously had been examined, and the reports contain opinions regarding the functional impact of his service-connected disabilities. Therefore, VA's duty to assist with respect to obtaining all relevant records, examinations, and opinions has been met. 38 U.S.C.A. § 5103A(d)(2); 38 C.F.R. § 3.159(c); Barr v. Nicholson, 21 Vet. App. 303, 312 (2007). 


Moreover, in obtaining the additional VA treatment records and having him reexamined, on remand, there was compliance with the Board's remand directives, certainly substantial compliance. See Stegall v. West, 11 Vet. App. 268, 271 (1998) (holding that a remand by the Board confers upon the Veteran, as a matter of law, the right to compliance with its remand instructions); but see also D'Aries v. Peake, 22 Vet. App. 97, 105 (2008) (holding that only "substantial" rather than strict compliance with the Board's remand directives is required under Stegall); accord Dyment v. West, 13 Vet. App. 141, 146-47 (1999).

The Veteran and his representative have not made the RO or Board aware of any additional, obtainable evidence still needing to be obtained in order to fairly decide this claim. They have been given ample opportunity to present evidence and argument in support of this claim. Pursuant to 38 C.F.R. § 3.655, all relevant evidence necessary for an equitable disposition of the appeal of this claim has been obtained, and it is ripe for appellate review. VA has complied with all procedural due process requirements. See 38 C.F.R. § 3.103 (2014).

II. The Merits of this TDIU Claim

The Veteran alleges that his service-connected disabilities render him unemployable and, therefore, entitled to a TDIU prior to September 15, 2014, which, to reiterate, is the effective date of his 100-percent schedular rating for bilateral hearing loss. 

Total disability ratings for compensation may be assigned, where the schedular rating is less than 100 percent, when the disabled person is, in the judgment of the rating agency, unable to secure or follow a substantially gainful occupation as a result of one or more service-connected disabilities without regard to advancing age or disabilities that have not been service connected. See 38 C.F.R. §§ 3.341(a), 4.16(a). Total disability will be considered to exist when there is present any impairment of mind or body that is sufficient to render it impossible for the average person to follow a substantially gainful occupation. 38 C.F.R. § 4.15; see also 38 C.F.R. § 3.340(a) (providing that to establish entitlement to a TDIU, there must be impairment so severe that it is impossible for the average person to follow a substantially gainful occupation). 

Substantially gainful employment is defined as work that is more than marginal and that permits the individual to earn a living wage. Moore v. Derwinski, 1 Vet. App. 356 (1991). In Faust v. West, 13 Vet. App. 342 (2000), the Court defined substantially gainful employment as "an occupation that provides an annual income that exceeds the poverty threshold for one person, irrespective of the number of hours or days that the Veteran actually works and without regard to the Veteran's earned annual income." Under VA Adjudication Procedure Manual, M21-1, Part VI, paragraph 7.09(a)(7), "substantially gainful employment," is defined as "that which is ordinarily followed by the nondisabled to earn their livelihood with earnings common to the particular occupation in the community where the Veteran resides." 

In Moore v. Derwinski, 1 Vet. App. 356, 359 (1991), the Court also discussed the meaning of "substantially gainful employment" and noted the following standard announced by the United States Federal Court of Appeals in Timmerman v. Weinberger, 510 F.2d 439, 442 (8th Cir. 1975): 

It is clear that the claimant need not be a total 'basket case' before the courts find that there is an inability to engage in substantial gainful activity. The question must be looked at in a practical manner, and mere theoretical ability to engage in substantial gainful employment is not a sufficient basis to deny benefits. The test is whether a particular job is realistically within the physical and mental capabilities of the claimant. 

Marginal employment, for example, as a self-employed worker or at odd jobs or while employed at less than half of the usual remuneration, shall not be considered "substantially gainful employment." 38 C.F.R. § 4.16(a). See also Moore (Robert) v. Derwinski, 1 Vet. App. 356, 358 (1991). That is, a Veteran may be considered as unemployable upon termination of employment that was provided on account of disability or in which special consideration or accommodation was given on account of the same. See 38 C.F.R. § 4.18. Marginal employment generally shall be deemed to exist when a Veteran's earned annual income does not exceed the amount established by the U. S. Department of Commerce, Bureau of the Census, as the poverty threshold for one person. 38 C.F.R. § 4.16(a). Marginal employment also may be held to exist on a facts-found basis when earned annual income exceeds the poverty threshold. Id. Such situations may include, but are not limited to, employment in a protected environment such as a family business or sheltered workshop. Id. 

In determining entitlement to a TDIU, the central inquiry is whether the Veteran's service-connected disabilities alone are of sufficient severity to cause unemployability, without regard to advancing age or disabilities for which service connection has not been established. See 38 C.F.R. §§ 3.341(a), 4.16(a); Hatlestad v. Brown, 5 Vet. App. 524, 529 (1993). In a pertinent precedent decision, VA's General Counsel concluded that the controlling VA regulations generally provide that Veterans who, in light of their individual circumstances, but without regard to age, are unable to secure and follow a substantially gainful occupation as the result of service-connected disability shall be rated totally disabled, without regard to whether an average person would be rendered unemployable by the circumstances. VAOPGCPREC 75-91. Thus, the criteria use a subjective (not just objective) standard. See id. VA's General Counsel further observed that "unemployability" is synonymous with inability to secure and follow a substantially gainful occupation. Id. 

Importantly, requiring a Veteran to prove 100 percent or total unemployability is different from requiring proof that he cannot obtain or maintain "substantially gainful employment." The use of the word "substantially" suggests intent to impart flexibility into a determination of overall employability, whereas a requirement that he prove 100-percent unemployability leaves no flexibility. See Roberson v. Principi, 251 F.3d 1378, 1385 (Fed. Cir. 2001). Moreover, in Friscia v. Brown, 7 Vet. App. 294, 297 (1994), the Court held that the Board may not reject a TDIU claim without producing evidence, as distinguished from mere conjecture, showing the Veteran can perform work that would produce sufficient income to be other than marginal. See also Beaty v. Brown, 6 Vet. App. 532, 537 (1994); Ferraro v. Derwinski, 1 Vet. App. 362, 331-32 (1991).

But all of that said, the mere fact that a claimant is unemployed or has difficulty obtaining employment is insufficient reason to find that he is unemployable. See Van Hoose v. Brown, 4 Vet. App. 361, 363 (1993). A high rating in itself is recognition that the impairment makes it difficult to obtain and keep employment, as VA's Rating Schedule is already designed to take into consideration impairment that renders it difficult to obtain and keep employment. Id.; see also 38 C.F.R. §§ 4.1, 4.15 (2014).

In order to satisfy the criteria for schedular consideration of entitlement to a TDIU, if unemployability is the result of only one service-connected disability, this disability must be ratable at 60 percent or more. See 38 C.F.R. § 4.16(a) If it is the result of two or more service-connected disabilities, at least one must be ratable at 40 percent or more, with the others sufficient to bring the combined rating to 70 percent or more. Id. Disabilities of one or both upper extremities or one or both lower extremities, including the bilateral factor, disabilities resulting from a common etiology or a single accident, disabilities affecting a single body system such as orthopedic disabilities, multiple injuries incurred in action, or multiple disabilities incurred as a prisoner of war will be considered as one disability for purposes of determining whether the Veteran satisfies these threshold minimum rating requirements. Id.

The standard of proof to be applied in decisions on claims for veterans' benefits is set forth in 38 U.S.C.A. § 5107 (West 2014). A claimant is entitled to the benefit of the doubt when there is an approximate balance of positive and negative evidence. See 38 C.F.R. § 3.102. When a claimant seeks benefits and the evidence is in relative equipoise, the claimant prevails. See Gilbert v. Derwinski, 1 Vet. App. 49 (1990). The preponderance of the evidence must be against the claim for benefits to be denied. See Alemany v. Brown, 9 Vet. App. 518 (1996). 


Prior to September 15, 2014, the Veteran was service connected for bilateral hearing loss, evaluated as 50-percent disabling, and for tinnitus, evaluated as 
10-percent disabling. Considering the bilateral hearing loss and tinnitus, which affect a single bodily system, as one disability, his combined disability rating was 60 percent during this earlier time period at issue. See 38 C.F.R. § 4.25 (VA's Combined Ratings Table). The rating requirements for consideration of a TDIU under § 4.16(a) resultantly are met, without having to resort alternatively to the special extra-schedular provisions of § 4.16(b). 

Therefore, the remaining inquiry is whether these disabilities rendered the Veteran unable to secure or follow a substantially gainful occupation prior to September 15, 2014. Factors such as employment history, as well as educational and vocational attainments, are for consideration. The Board emphasizes that a TDIU is limited to consideration of service-connected disabilities. 

In his September 2011 formal application for a TDIU, the Veteran reported he had last worked as a machinist supervisor in 1985. He reported finishing grade school, so an 8th-grade education, and working as a machinist supervisor for the same business from 1960 to 1985. In an application for TDIU submitted in January 2015, he indicated he had last worked full-time in April 1985 and became too disabled to work in April 1990. He noted the factory he had worked in closed 20 years earlier.

The Veteran underwent a VA general medical examination in August 2012 and a VA audiological evaluation in September 2014, as mentioned on remand.

In a claim for a TDIU, the ultimate question of whether a Veteran is capable of substantially gainful employment is not a medical one; that determination is for the adjudicator. See 38 C.F.R. § 4.16(a); see also Geib v. Shinseki, 733 F.3d 1350, 1354 (Fed. Cir. 2013) (noting that "applicable regulations place responsibility for the ultimate TDIU determination on the [adjudicator], not a medical examiner"); Floore v. Shinseki, 26 Vet. App. 376, 381 (2013) (observing that "medical examiners are responsible for providing a 'full description of the effects of disability upon the person's ordinary activity,' 38 C.F.R. § 4.10 (2013), but it is the rating official who is responsible for 'interpret[ing] reports of examination in light of the whole recorded history, reconciling the various reports into a consistent picture so that the current rating may accurately reflect the elements of disability present,' 38 C.F.R. § 4.2 (2013)."). It is currently the Veteran Benefits Administation's (VBA's) policy that:

If the facts of the case require VA to examine the Veteran [as part of his or her TDIU claim], do not ask the examiner to opine as to whether or not the Veteran is unemployable due to his or her 
service-connected disabilities. The responsibility for this decision rests solely with the rating activity. VA should request that the examiner comment instead on the functional impairment caused solely by the service-connected disabilities.

VBA Fast Letter 13-13 (Jun. 17, 2013) (citations omitted) (emphasis added). While Fast Letters are not binding on the Board, the information contained therein is consistent with case law, as discussed above. Floore, 26 Vet. App. at 381.

The August 2012 VA examiner diagnosed hearing loss and tinnitus. He noted he had reviewed the Veteran's claims file and VA treatment records. He found the Veteran's hearing ability was limited but noted a separate audiological evaluation would be performed. The Veteran reported working as a machinist and retiring at the age of 63 or 64 because he was "ready to retire at that time." In an October 2012 e-mail, a VA employee requested the examiner to discuss the function and impairment of the Veteran's hearing loss and tinnitus and how they impact his ability to perform physical and sedentary employment because he had failed to appear for the scheduled audiological evaluation. In response, the examiner noted the Veteran's most recent audiological examination was in August 2011 and opined there had been no significant changes since then. He observed the August 2011 examiner had stated the hearing loss and tinnitus had no effect on the Veteran's ability to work. Therefore, this examiner opined that the hearing loss and tinnitus continued to have no impact on the Veteran's ability to perform physical and sedentary employment. 

In a March 2013 letter (received in April 2013), accompanied by a completed disability benefits questionnaire (DBQ), a private audiologist diagnosed bilateral severe-to-profound sensorineural hearing loss and tinnitus. She noted, however, the Veteran had been diagnosed with dementia and his inability to remember directions made it difficult to complete the audiological evaluation and caused some inconsistencies in the test results. Thresholds and test scores were completed twice to ensure the most accurate results. The Veteran reported he was experiencing more difficulty hearing conversations and that his tinnitus might have been worsening. The audiologist opined his "severe to profound sensorineural hearing loss in both ears and bilateral tinnitus have rendered him unemployable." She reasoned he needs to avoid working in any environment in which there is any noise that might exacerbate his hearing loss. Such limitations, she found, would prevent face-to-face or telephone verbal communication, even with the use of amplification. She also found his disabilities would pose a safety risk in any job involving driving or being around machinery. She concluded his service-connected hearing loss would significantly impair his employability in most job assignments with or without adaptation or amplification. She noted his military occupational specialty (MOS) was a power plant repairman, but did not indicate she was aware of his education level or post-service employment history. In an accompanying letter, the Veteran's represented argued such findings show the Veteran is entitled to a TDIU. 

The September 2014 VA examiner diagnosed bilateral sensorineural hearing loss and tinnitus. The examiner additionally conceded the Veteran's hearing loss impacted the ordinary conditions of daily life, including his ability to work, noting the Veteran reported struggling to understand those around him. He reported his tinnitus was intermittent. But, ultimately, the examiner opined that "with reasonable accommodation according to the Americans with Disabilities Act (ADA), hearing loss and tinnitus alone should not prevent employment in a loosely supervised situation with limited public contact." She noted, however, the Veteran's ability to communicate may be compromised by difficulty hearing in adverse listening situations and that he may have difficulty understanding speech on the telephone and in encounters with unfamiliar speakers. She also noted occupational communicative situations may include verbal instructions, which could be misunderstood by an individual with hearing loss. But the hearing loss alone, she concluded, should not prevent all types of employment. She also found that, although tinnitus is bothersome, it should not affect employment, unless other psychological factors are present that may exacerbate an individual's reaction to tinnitus. She noted that the Veteran's 8th grade education and 25-year history as a machinist supervisor did not change her opinion that hearing loss and tinnitus alone should not prevent gainful employment.

Based on these opinions, the Board finds that the Veteran was not unemployable prior to September 15, 2014, on account of his service-connected disabilities. While there admittedly is indication his service-connected bilateral hearing loss and tinnitus impacted his employability, this, alone, is not tantamount to outright preclusion of what could be considered substantially gainful employment (versus just marginal) and, thus, insufficient reason to grant a TDIU because the ratings for his service-connected bilateral hearing loss and tinnitus take this into account. 38 C.F.R. §§ 4.1, 4.15. The degree of impairment in occupational functioning that is generally deemed indicative of unemployability consists of a showing that the Veteran is "[in]capable of performing the physical and mental acts required by employment," and is not based solely on whether he is unemployed or has difficulty obtaining or maintaining employment. See Van Hoose v. Brown, 4 Vet. App. 361 (1993). Rather, the record must demonstrate some factor that takes his situation outside the norm since the VA Rating Schedule already is designed to take into consideration impairment that renders it difficult to obtain and keep employment. Id. A claim for a TDIU "presupposes that the rating for the 
[service-connected] condition is less than 100 [percent], and only asks for TDIU because of 'subjective' factors that the 'objective' rating does not consider." See Vettese v. Brown, 7 Vet. App. 31, 34-35 (1994). But, here, even prior to September 15, 2014, so during the time at issue, the Veteran had a 50-percent rating for his bilateral hearing loss and a 10 percent rating for his tinnitus, so as mentioned a combined 60 percent disability rating when considering the two, meaning in the upper half of the rating spectrum (i.e., 0 to 100 percent scale).


According to the Court, "the probative value of medical opinion evidence is based on the medical expert's personal examination of the patient, the physician's knowledge and skill in analyzing the data, and the medical conclusion the physician reaches." Guerrieri v. Brown, 4 Vet. App. 467, 470 (1993). The credibility and weight to be attached to these opinions is within the province of the Board. Id. The failure of the physician to provide a basis for his/her opinion affects the weight or credibility of the evidence. Hernandez-Toyens v. West, 11 Vet. App. 379, 382 (1998).

The September 2014 VA examiner found that, while the Veteran's ability to communicate may be compromised by difficulty hearing in adverse listening situations and understanding speech on the telephone and in encounters with unfamiliar speakers, his hearing loss and tinnitus should not prevent employment in a loosely-supervised situation with limited public contact and reasonable accommodation according to the ADA. In this regard, the Veteran's employment background as a machinist and supervisor suggests he would not need constant supervision or need to make public contact, so this is not a situation where the examiner's assessment of employability is an unrealistic expectation given the Veteran's level of education, prior work experience and training since he has had precisely this type of job as a machinist in years prior. The examiner's conclusion suggests his service-connected hearing loss and tinnitus do not render him outright unemployable. And, to reiterate, a mere impact on employability is not tantamount to a finding of actual unemployability. 

The August 2012 VA examiner's inability to base his conclusions on an updated audiological evaluation limits the probative value of his opinion that the Veteran's hearing loss and tinnitus continued to have no impact on his ability to perform physical and sedentary employment. However, he did examine the Veteran in person and reviewed his claims file prior to reaching his conclusion, and the Board finds his opinion is of some probative value. 


The private audiologist noted the Veteran's nonservice-connected dementia and inability to remember directions caused inconsistencies in the results of the evaluation. Additionally, she did not indicate she was aware of the Veteran's education level or post-service work history. She also did not explain why she concluded accommodations, including amplification, would not enable him to continue working. Therefore, this opinion has little probative value. 

The September 2014 VA examiner's opinion ultimately concluding the Veteran is still employable (even if admittedly there is a definite impact on certain types of employment, requiring communicating on the telephone or with unfamiliar speakers, owing to his service-connected hearing loss), on the other hand, is well-reasoned and based on an objective clinical evaluation of him and an independent review of his claims file for the pertinent medical and other history, including his educational and employment history. So the report, in combination with the August 2012 VA examiner's opinion, has the proper factual foundation and predicate and, therefore, is entitled to a lot of probative weight. Elkins v. Brown, 5 Vet. App. 474, 478 (1993); Swann v. Brown, 5 Vet. App. 177, 180 (1993). Based on the opinions of the VA examiners in combination, whose opinions have more probative value than the one private opinion that was based on inconsistent evaluation results without a full picture of the Veteran's background, the Board finds that the overall weight of the evidence shows the Veteran was not incapable of obtaining and maintaining substantially gainful employment because of his service-connected disabilities prior to September 15, 2014.

The Board is mindful of the Veteran's assertions that he is entitled to TDIU prior to September 15, 2014, but he is not shown to have requisite medical training, expertise, or credentials needed to render a medical opinion as to the severity of his service-connected disabilities - including especially their functional impact. See Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007). To the extent he argues that the medical evidence supports a TDIU prior to September 15, 2014, he is not competent to make such assertions. 


In sum, the most probative evidence of record shows the Veteran's service-connected disabilities, alone, did not preclude substantially gainful employment prior to September 15, 2014. While he clearly has service-connected disabilities that caused occupational impairment prior to then, the impact was reflected by the combined 60 percent rating. For these reasons and bases, the preponderance of the evidence is against this claim of entitlement to a TDIU prior to September 15, 2014 - in turn meaning there is no reasonable doubt to resolve in the Veteran's favor and that this claim must be denied. See 38 U.S.C.A. § 5107(b); 38 C.F.R. § 4.3; Alemany v. Brown, 9 Vet. App. 518, 519 (1996). 


ORDER

The claim of entitlement to a TDIU prior to September 15, 2014, is denied. 




____________________________________________
KEITH W. ALLEN
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs