**Alex V. GUERRIERI, Appellant,**

v.

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

**No. 90–679.**

United States Court of Veterans Appeals.

Argued March 10, 1992.

Decided April 7, 1993.

John F. Castellano, for appellant.

Rosalind E. Masciola, with whom Robert E. Coy, Acting Gen. Counsel, Barry M. Tapp, Asst. Gen. Counsel, and Thomas A. McLaughlin, Deputy Asst. Gen. Counsel, were on the brief, for appellee.

Ruth Eisenberg, with whom Gershon M. Ratner, was on the brief, as amicus curiae.

Before MANKIN, HOLDAWAY and STEINBERG, Associate Judges.

MANKIN, Associate Judge:

Appellant appeals a Board of Veterans' Appeals (Board or BVA) decision, dated June 8, 1989, which denied service-connected disability benefits for appellant's psychiatric disability. The Secretary of Veterans Affairs (Secretary) has submitted a Motion for Remand. Appellant submitted an affidavit in opposition to the Secretary's motion. The Court has jurisdiction over this case pursuant to 38 U.S.C.A. § 7252 (West 1991).

## I. FACTUAL BACKGROUND

The veteran served in the United States Army from February 1980 to February 1981. Prior to his enlistment in April 1978, appellant was hospitalized for thirteen days for symptoms of paranoid schizophrenia. Nevertheless, appellant's service entrance examination report from January 1980 indicated normal psychiatric findings, and appellant was rated qualified for duty. In his report of medical history, appellant denied having been treated for a mental condition. Sometime in June 1980, appellant was assigned to duty at the U.S. Military Academy, at West Point, New York. Appellant claims that during his tour of duty he had difficulty coping with army life and was harassed by other soldiers. As a result of the stress, the veteran left his duty post without authorization and returned to his mother's home, where he remained for about twenty-five days. The mother re-ported that during his stay appellant was moody, lacked personal hygiene, and did not sleep well. Initially she controlled his symptoms by medicating his orange juice and milk. When the supply of medication ran out, she called the military authorities to take appellant to a psychiatric hospital. In November 1980, the veteran was referred to the Walter Reed Army Medical Center for psychological testing. Appellant was diagnosed as suffering from schizophrenia, residual type, subchronic, and was deemed unfit for further military duty. In January 1981, a medical evaluation board determined that appellant's psychiatric condition was abnormal and that he was unqualified for duty. Appellant indicated that he did not wish to continue active duty and signed a "Disposition Form" stipulating that he requested discharge for *"physical* disability based upon ... disability that was found to have existed prior to ... entry into active service." He further stipulated that the medical board "found the disability neither incident to, nor aggravated by, [his] military service." (emphasis added).

In February 1981, appellant claimed service connection for schizophrenia. In support of his claim, appellant submitted hospital records from the Psychiatric Inpatient Unit of the Coney Island Hospital from June 1981, where he was admitted after assaulting his father and threatening to kill his mother. These records show that appellant was again diagnosed with paranoid schizophrenia, and referred to a psychiatric center for further treatment. In addition, appellant submitted a medical record from the Day Treatment Center of the Coney Island Hospital showing treatment received from August to November 1981. Appellant's claim for service connection was apparently denied. An appeal was taken to the BVA, which again denied the claim. The Board reasoned that "[t]he underlying pathology of the veteran's schizophrenia was consistent before, during, and after service; and no increase ... is shown to have [been] incurred during service." *Alex V. Guerrieri*, 82–39089 BVA, at 35–36 (Apr. 11, 1983). The Board concluded that "[t]he presumption of soundness at entry

into service is rebutted," and "[s]chizophrenia was not aggravated by service."

The veteran reopened his claim for a psychiatric disorder in 1985. On May 1, 1987, the BVA issued a decision denying appellant's claim. The new evidence considered by the Board consisted of: private medical reports showing appellant was treated in 1978 for psychotic behavior and received treatment after service; letters from physicians opining a causal relationship between the stress the veteran experienced in service and worsening of his condition; personal hearing testimony; letters from appellant's mother and pastor; and college transcripts. Subsequent to the May 1 decision, the veteran submitted letters from Joseph G. Frechen, M.D., and David Plimpton, Ph.D., of South Beach Psychiatric Center, who treated appellant during 1985 to 1987. Both individuals stated that, in their opinions, the stresses of service aggravated appellant's condition. The veteran also gave sworn testimony during a personal hearing at the Veterans' Administration (now Department of Veterans Affairs) (VA) Regional Office in New York City held on March 25, 1988. At that time appellant testified that the Army had authorized his enlistment with full knowledge of his prior psychiatric treatment. He also testified that during service he attempted suicide, was handcuffed to a fence, and was shot at by fellow soldiers. Following the hearing, the rating board denied the veteran's claim. In June 1989, the BVA again denied appellant's claim for service connection for a psychiatric disability in the decision now on appeal before the Court.

## II. ANALYSIS

### A.

■ In its decision, the BVA concluded that the evidence submitted since the Board's May 1987 decision does not provide a new factual basis which establishes entitlement to service connection. This determination relies on an analysis that has since been discredited by this Court's holding in *Manio v. Derwinski*, 1 Vet.App. 140 (1991). In *Manio* the Court set forth a two-part test for determining whether evidence is "new and material" for purposes of reopening a claim. *See* 38 U.S.C.A. § 5108 (West 1991). The BVA must first determine whether the evidence submitted is "new and material." *Manio*, 1 Vet.App. at 145. Second, if the evidence is new and material, then the case is reopened and the BVA must evaluate the appellant's claim in light of *all* the evidence, both new and old. *Id.*

■ The question of whether evidence is new and material is a conclusion of law, which this Court reviews de novo. *See Smith v. Derwinski*, 1 Vet.App. 178, 180 (1991), *Colvin v. Derwinski*, 1 Vet.App. 171, 174 (1991). In order to be considered new, evidence must do more than merely summarize or repeat evidence submitted in previous proceedings. *See Wilisch v. Derwinski*, 2 Vet.App. 191, 193 (1992); *see also Colvin*, 1 Vet.App. at 174. New evidence is considered material when "it is relevant and probative of the issue at hand." *Colvin* 1 Vet.App. at 174. However, not every piece of new evidence, even if relevant and probative, will justify reopening. *Id.* In order to justify the reopening of a case based on new and material evidence, "there must be a reasonable possibility that the new evidence, when viewed in the context of all the evidence, both new and old, would change the outcome." *Id.*

■ The Secretary argues in his brief that the medical opinions offered by appellant's treating psychiatrist, Dr. Frechen, and his treating psychologist, Dr. Plimpton, were not new because they are similar to evidence previously considered by the Board. The Court holds that the statements of Dr. Frechen and Dr. Plimpton are not *"merely* cumulative" under this Court's precedent. *Colvin*, 1 Vet.App. at 175. Additionally, the Court finds that the opinions of Dr. Frechen and Dr. Plimpton corroborating the earlier medical opinions submitted by appellant to be relevant to and probative of the issue of service connection. *Paller v. Principi*, 3 Vet.App. 535 (1992). The probative value of medical opinion evidence is based on the medical

expert's personal examination of the patient, the physician's knowledge and skill in analyzing the data, and the medical conclusion that the physician reaches. In the facts before us in this case, even though these corroborating statements reach a conclusion previously considered by the Board, the additional examination and medical skill underlying the physician's opinions brings new significance to the sum total of evidence. Therefore, we hold that the evidence presented by appellant is new and material to the issue of service connection for a psychiatric disability and that the BVA should have reopened the claim for consideration of the entire evidence of record. *Manio*, 1 Vet.App. at 145. This does not mean that upon readjudication the Board is compelled to accept these opinions. As is true with any piece of evidence, the credibility and weight to be attached to these opinions, once the claim is reopened, is, in the first instance, within the province of the adjudicators; reasons or bases do have to be given to explain the weight given (or not given) material evidence.

### B.

■ The BVA decision does not cite medical evidence of record to support its conclusion that the new evidence submitted by appellant "did not establish that there was any increase in the severity of the veteran's preexisting psychiatric disability during his active military duty." *Guerrerri*, BVA 89–03100, at 6. The BVA is prohibited from asserting its own unsubstantiated medical opinion. *Colvin*, 1 Vet.App. at 175. Thus, when the BVA doubts the weight or credibility of the medical evidence offered by appellant, the Board should cite contrary evidence that supports its position or seek "an advisory opinion ... or [quote] recognized medical treatises in its decision that clearly support its ultimate conclusions." *Id.; see also Hatlestad v. Derwinski*, 3 Vet.App. 213, 217 (1992).

■ In addition to failing to address meaningfully the new medical opinion evidence, the Board failed to articulate reasons or bases for its finding that appellant's preexisting psychiatric disorder was not aggravated in service. *See* 38 U.S.C.A. § 7104(d)(1) (West 1991); *Gilbert v. Derwinski*, 1 Vet.App. 49 (1990). The Secretary has admitted error, conceding that the BVA failed to state reasons or bases for its dismissal of the statements by appellant's treating psychiatrist and psychologist, and for declining to give due consideration to the "benefit of the doubt." *See* 38 U.S.C.A. § 5107(b) (West 1991). In his affidavit in opposition to appellee's motion for remand, appellant moves the Court to deny the Secretary's motion and set aside the BVA decision as "clearly erroneous." The Court is prevented from deciding whether or not the conclusions of the Board are "clearly erroneous" where, as here, the Board has failed to produce a decision that permits effective judicial review. *Quarles v. Derwinski*, 3 Vet.App. 129 (1992). Therefore, we grant the Secretary's motion and remand the case for a critical examination of all the evidence of record and a full written justification for the Board's conclusions. *See Fletcher v. Derwinski*, 1 Vet. App. 394, 397 (1991). On remand, appellant is free to submit additional evidence and argument, and the Board will "seek any other evidence it feels is necessary" to assist in a timely adjudication of appellant's claim. *Id.; see Quarles*, 3 Vet.App. at 141. After consideration of all the evidence of record, the BVA shall determine whether there is an "approximate balance of positive and negative evidence" which entitles appellant to the benefit of the doubt and an award of service connection. 38 U.S.C.A. § 5107(b); *Gilbert*, 1 Vet.App. at 54.

### III. THE "TREATING PHYSICIAN RULE"

■ Appellant and the National Veterans Legal Services Project, as amicus curiae, urge the Court to adopt the "treating physician rule" (the Rule), as applied by the majority of federal courts in evaluating claims for disability benefits under the Social Security Act. 42 U.S.C.A. § 301 *et seq.* (West 1991). The Rule "governs the weight to be accorded to the medical opinion of the claimant's treating physician relative to other evidence before the factfinder, including the opinions of other physi-

cians." *Schisler v. Heckler*, 787 F.2d 76, 81 (2nd Cir.1986). In *Schisler*, the United States Court of Appeals for the Second Circuit stated the "Rule" as follows:

> [The] treating source's opinion on the subject of medical disability, i.e., diagnosis and nature and degree of impairment, is (i) binding on the factfinder unless contradicted by substantial evidence; and (ii) entitled to some extra weight, ... although resolution of genuine conflicts between the opinion of the physician, with its extra weight, and any substantial evidence to the contrary remains the responsibility of the fact-finder.

*Schisler*, 787 F.2d at 81.

The "Rule" was formulated specifically to address problems generated by the Social Security system, where the factfinder must weigh the diagnosis of a claimant's physician against the opinions of Social Security's consulting physicians. The Rule is applied to help resolve conflicting medical evidence by giving legal recognition to the assumption that a Social Security claimant's own treating doctor is the physician best able to present a complete picture of the claimant's medical condition. *Id.*

Judicial application of the "treating physician rule" to Social Security cases is grounded in statute. In 1984, Congress amended the Social Security Act to provide that in making a disability determination "the Secretary [of Health and Human Services] shall make every reasonable effort to obtain from the individual's treating physician ... all medical evidence, including diagnostic tests, necessary in order to properly make such determination, prior to evaluating medical evidence obtained from any other source...." 42 U.S.C.A. § 423(d)(5)(B) (West 1991). *See* Social Security Reform Act of 1984, Pub.L. No. 98–460, § 9(b)(2). The Secretary argues that no similar controlling legislation applies to the VA and that application of the Rule is contravened by VA statutes and regulations. First, unlike the Social Security Administration, the VA operates its own system of medical facilities for the care and treatment of veterans. The statute provides:

> There is in the [VA] a Veterans Health Administration.... The primary function of the Administration is to provide a complete medical and hospital service for the medical care and treatment of veterans, as provided in this title and in regulations prescribed by the Secretary pursuant to this title.

38 U.S.C.A. § 7301(a), (b) (West 1991). Pursuant to this statutory authority, the VA promulgated regulations which require VA examinations of veterans to be conducted as part of the evaluative process for claims of service connection. *See* 38 C.F.R. §§ 3.326 and 3.327 (1992). The availability of care at VA medical facilities means that VA physicians will often be the veteran's "treating physician."

While the "treating physician rule" is helpful in resolving physician's conflicting *diagnoses* in the context of Social Security claims, it is not suitable for application to the issue of service connection of a veteran's disabilities. The "Rule" is applied in Social Security cases in order to determine whether a claimant is "under a disability or continues to be under a disability," and in determining "diagnosis and nature and degree of impairment." *Schisler*, 787 F.2d at 81. The Rule would not be appropriate for application to the issue of service connection and might raise a conflict with the VA's evaluative process outlined in 38 C.F.R. § 3.303 (1992). Section 3.303(a) provides that "determinations as to service connection will be based on review of the *entire evidence* of record, with due consideration to the policy of [the VA] to administer the law under a broad and liberal interpretation consistent with the facts in each individual case." 38 C.F.R. § 3.303(a) (emphasis added). The VA historically has adjudicated claims and administered benefits in a paternalistic, non-adversarial setting. *See Littke v. Derwinski*, 1 Vet.App. 90, 91 (1990). Indeed, when a claimant submits a well grounded claim, the Secretary is under a statutory duty to "assist such a claimant in developing the facts pertinent to the claim." 38 U.S.C.A. § 5107(a) (West 1991).

The Court has held that "[t]he conclusion of the examining VA psychiatrist is a medi-

cal conclusion, one which the BVA is not free to ignore or disregard." *Willis v. Derwinski*, 1 Vet.App. 66, 70 (1991). The Court extended this principle to the medical conclusions of any examining physician. *Gleicher v. Derwinski*, 2 Vet.App. 26, 29 (1991); *Hanson v. Derwinski*, 1 Vet.App. 512, 516 (1991); *Caldwell v. Derwinski*, 1 Vet.App. 466, 470 (1991). The Court further expanded this principle to include the opinions of treating physicians. *Smith v. Derwinski*, 2 Vet.App. 137, 141 (1992). This requirement applies with equal force to the opinions of certain other health-care professionals, such as appellant's treating psychologist, providing professional treatment for a veteran's disabilities. *Cf. Masors v. Derwinski*, 2 Vet.App. 181, 187 (1992) ("observations and opinions of a treating psychotherapist, based upon several years of treatment, are certainly pertinent to the veteran's claim of unemployability").

In the past, when urged to do so, this Court has declined to adopt a rule that accords greater weight to the opinions of treating physicians. *Chisem v. Brown*, 4 Vet.App. 169 (1993). We repeat that the Court has not adopted and will not today adopt, a rule that gives the opinions of treating physicians greater weight in evaluating claims made by veterans. As in the consideration of any evidence submitted in support of a veteran's claim, the BVA must articulate the reasons or bases for accepting or rejecting the medical opinions of treating physicians and psychologists for the weight it ascribes to the evidence. 38 U.S.C.A. § 7104(d)(1) (West 1991); *Gilbert*, 1 Vet.App. at 56.

## IV.  CONCLUSION

Accordingly, the Secretary's motion for remand is GRANTED, and the June 8, 1989, decision of the Board is VACATED and REMANDED for further proceedings consistent with this opinion.