http://www.va.gov/vetapp16/Files4/1630398.txt

Citation Nr: 1630398 
Decision Date: 07/29/16 Archive Date: 08/04/16

DOCKET NO. 13-23 454 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Waco, Texas

THE ISSUES

1. Entitlement to service connection for Epstein-Barr virus (EBV).

2. Entitlement to service connection for nasopharyngeal carcinoma.

3. Entitlement to service connection for dysphagia.

4. Entitlement to service connection for dry mouth.

5. Entitlement to service connection for immune homeostasis.

6. Entitlement to service connection for neuropathy of both feet.

7. Entitlement to increases in the (10 percent prior to May 23, 2011, 20 percent from May 13, 2011 through April 30, 2012, 10 percent from May 1, 2012 through June 11, 2016, and 60 percent from January 12, 2016) ratings assigned for bilateral hearing loss.

REPRESENTATION

Appellant represented by: Texas Veterans Commission

WITNESSES AT HEARING ON APPEAL

Appellant and spouse

ATTORNEY FOR THE BOARD

 James R. Siegel, Counsel

INTRODUCTION

The appellant is a Veteran who served on active duty from September 1968 to September 1970. These matters are before the Board of Veterans' Appeals (Board) on appeal from rating decisions of the Waco, Texas Department of Veterans Affairs (VA) Regional Office (RO). A June 2010 rating decision increased the rating for bilateral hearing loss to 10 percent effective February 17, 2010. An October 2012 rating decision denied the service connection claims and assigned 20 percent from May 23, 2011, and 10 percent from May 1, 2012 ratings for hearing loss. In June 2015, a videoconference hearing was held before the undersigned; a transcript is in the record. In October 2015, the Board sought a medical advisory opinion from the Veterans Health Administration (VHA) regarding the etiology of the Veteran's EBV-related nasopharyngeal carcinoma. That opinion was provided in January 2016, and the Veteran was provided notice of it later that month, and further notice in July 2016. See 38 C.F.R. §§ 20.901, 20.903. A March 2016 rating decision increased the rating for bilateral hearing loss to 60 percent, effective January 12, 2016.

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2015). 38 U.S.C.A. § 7107(a)(2) (West 2014).

The issues of service connection for neuropathy of the feet and regarding the ratings for bilateral hearing loss are being REMANDED to the Agency of Original Jurisdiction (AOJ). VA will notify the Veteran if action on his part is required.

FINDINGS OF FACT

1. The Veteran served in Vietnam during the Vietnam era.

2. The Veteran's EBV was not manifested in service, and the preponderance of the evidence is against a finding that his residuals of EBV are related to his service.

3. The Veteran's nasopharyngeal carcinoma was not manifested in service or for many years thereafter, and the preponderance of the evidence is against a finding that such disability is related to his service, to include as due to exposure to Agent Orange.

4. The Veteran's dysphagia was not manifested in service, and the preponderance of the evidence is against a finding that it is related to his service or was caused or aggravated by a service-connected disability. 

5. The Veteran's dry mouth was not manifested in service, and the preponderance of the evidence is against a finding that it is related to his service or was caused or aggravated by a service-connected disability. 

6. The Veteran's immune homeostasis was not manifested in service, and the preponderance of the evidence is against a finding that it is related to his service or was caused or aggravated by a service-connected disability. 

CONCLUSIONS OF LAW

1. Service connection for EBV is not warranted. 38 U.S.C.A. §§ 1110, 5107 (West 2014); 38 C.F.R. § 3.303 (2015).

2. Service connection for nasopharyngeal carcinoma is not warranted. 38 U.S.C.A. §§ 1101, 1110, 1112, 1113, 1116, 5107 (West 2014); 38 C.F.R. §§ 3.307, 3.309, 3.310 (2015).

3. Service connection for dysphagia is not warranted. 38 U.S.C.A. § 5107 (West 2014); 38 C.F.R. § 3.310 (2015).

4. Service connection for dry mouth is not warranted. 38 U.S.C.A. § 5107 (West 2014); 38 C.F.R. § 3.310 (2015).

5. Service connection for immune homeostasis is not warranted. 38 U.S.C.A. 
§ 5107 (West 2014); 38 C.F.R. § 3.310 (2015).

REASONS AND BASES FOR FINDINGS AND CONCLUSION

Veterans Claims Assistance Act (VCAA)

The VCAA, in part, describes VA's duties to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5106, 5107, 5126; 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a). VA's duty to notify was satisfied by letters dated in May, August, September and November 2011. See 38 U.S.C.A. §§ 5102, 5103, 5103A (West 2014); 38 C.F.R. § 3.159 (2015); see also Scott v. McDonald, 789 F.3d 1375 (Fed. Cir. 2015).

The Veteran's service treatment records (STRs), and private and VA medical records have been secured. He was afforded a VA examination, and the VA obtained an opinion regarding the etiology of the claimed disabilities. VA's duty to assist is met.
In Bryant v. Shinseki, 23 Vet. App. 488 (2010), the United States Court of Appeals for Veterans Claims (Court) held that 38 C.F.R. 3.103(c)(2) requires that a RO official or VLJ who conducts a hearing fulfill two duties: (1) to fully explain the issues and (2) to suggest the submission of evidence that may have been overlooked. At the June 2015 hearing, the undersigned identified the issues and advised the Veteran of what is needed to substantiate his claims. The Veteran's testimony was focused on the elements necessary to substantiate the instant claims; it reflects that he is aware of the elements necessary to substantiate his claims, and what must still be shown. A deficiency in the conduct of the hearing is not alleged. 

Factual Background, Legal criteria and Analysis 

The Board has reviewed all of the evidence in the Veteran's record. Although the Board is required to provide reasons and bases supporting its decision, there is no need to discuss each item of evidence in the record. Hence, the Board will summarize the pertinent evidence as deemed appropriate, and the Board's analysis will focus specifically on what the evidence of record shows, or does not show, with respect to the claims. See Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000).

The Veteran's STRs are silent for complaints or findings pertaining to the EBV or nasopharyngeal carcinoma. 

VA outpatient treatment records show that in March 2006, it was noted the Veteran had smoked one pack per day for 25 years, but had quit 15 years earlier.

Private medical records show that in September 2010, the Veteran stated he had been having sinusitis type symptoms for a couple of weeks. The symptoms progressed and he was evaluated by another physician who found a lymph node on the left side of his neck. A direct laryngoscopy and biopsy of the nasopharynx after a head CT demonstrated findings consistent with a large skull base lesion, destroying the skull base and the posterolateral margins of the left sphenoid sinus. There were abnormal lymph nodes in the left neck and two ill-defined hepatic lesions. There was also a small right middle lobe pulmonary nodule, and a soft tissue mass was in the left sphenoid sinus. A biopsy of the left nasopharynx was consistent with carcinoma, nonkeratinizing, poorly-differentiated malignancy. The Veteran told the examiner he presented with lymph nodes three weeks earlier and had rapidly developed left vocal cord paralysis with findings of hoarseness and difficulty swallowing, likely due to central compression of the cranial nerves. A PET scan was consistent with positive malignant nasopharyngeal mass eroding into the sphenoid sinus. The assessment was stage IV nasopharyngeal carcinoma with findings of metastatic disease with possible metastasis in the sternum and lung. Systemic chemotherapy was recommended.

On September 2012 VA nose and throat examination, the diagnosis was benign or malignant neoplasm of the sinus, nose, throat or larynx. It was noted the condition had its onset in September 2010 and that the treatment had included chemotherapy and radiation. It was indicated that the Veteran's side effects from the treatment included mucosal dryness, tingling in "the feet and the fingers," difficulty swallowing, and dryness in the mouth. The examiner opined that it was less likely than not that the Veteran's conditions were incurred in or caused by service. She stated that Epstein-Barr related nasopharyngeal carcinoma is not on the current Agent Orange presumptive list; EBV is one of the most common viruses in humans; and that it would be impossible to determine when/where he contracted the virus. 

In June 2015, a VA physician stated he was treating the Veteran, who had been diagnosed with nasopharyngeal cancer. He opined that it was at least as likely as not that the Veteran's cancer was caused by Agent Orange. He submitted another stated later in June 2015 and noted that it was at least as likely as not that the Veteran's cancer was from exposure to the EBV and Agent Orange. 

The Veteran has submitted various medical treatise articles in support of his claim. One study noted that service in Vietnam and/or exposure to Agent Orange disturbed the immune-homeostasis, resulting in dysregulation of B and T cell activities. Another noted there is a large body of evidence supporting the role of the EBV as a primary etiologic agent in the pathogenesis of nasopharyngeal carcinoma.

Since the evidence in the record did not adequately resolve all of the medical questions presented, the Board sought a VHA medical advisory opinion in this matter. Specifically, the Board requested an opinion as to what was the most likely etiology for the Veteran's EBV-related nasopharyngeal carcinoma, to include whether it was at least as likely as not due to exposure to the EBV and/or Agent Orange in service. The Board also requested an opinion as to whether nasopharyngeal carcinoma is a respiratory cancer. 

In his January 2016 response, the VHA's consulting expert in infectious diseases stated there was no such thing as a Southeast Asian strain of the EBV. He noted that the current serotypes are distributed all over the world and are not specifically associated with geography. He acknowledged that a 1991 study had found differences between the "Chinese strain" and other strains. The consulting expert added he was "quite sure" the Veteran had not had the special studies done in an attempt to attach a geographic heritage to the EBV strain. He noted most human adults had been exposed to or had acquired the EBV. He stated it was possible for the Veteran to have acquired the EBV in Vietnam since the symptoms of acquisition are so variable and the virus is so common. He said the term "respiratory carcinoma" is non-medical and non-sensical. He stated that whether EBV will later cause nasopharyngeal cancer is not answered. He commented that it was rare that a carrier of EBV develops nasopharyngeal carcinoma and, therefore, what triggers the rare individual to develop nasopharyngeal carcinoma is unknown. With respect to a link between Agent Orange and nasopharyngeal carcinoma, the consulting expert acknowledged such a link existed, but there are other factors predisposing to oropharyngeal and nasopharyngeal cancer, to include smoking and drinking. He stated that it was hard to assign risk to EBV or Agent Orange when such are known other risks and perhaps were present. In sum, the expert stated the Veteran could have acquired the EBV in Southeast Asia, but it was much more likely that he did so in the United States since more than 95 percent of adults in the nation have been infected or acquired the virus. Very few people who have the EBV ever develop nasopharyngeal cancer, and that while there is correlation, causation has not been established. The relationship of Agent Orange and nasopharyngeal cancer is unknown. 

Service connection may be granted for a disability resulting from a disease or injury incurred in or aggravated by active service. See 38 U.S.C.A. §§ 1110, 1131; 38 C.F.R. § 3.303(a). Establishing service connection generally requires evidence of: (1) a current disability (for which service connection is sought); (2) incurrence or aggravation of a disease or injury in service; and (3) a nexus between the claimed disability and the disease or injury in service. See Shedden v, Principi, 381 F.3d 1153, 1166-1167 (Fed. Cir. 2004).

Certain chronic diseases (among them carcinoma) may be service-connected on a presumptive basis if manifested to a compensable degree within a specified period of time postservice (one year for carcinoma). 38 U.S.C.A. § 1112; 38 C.F.R. §§ 3.307, 3.309. 

Certain chronic diseases (identified in 38 C.F.R. § 3.309(e), and including respiratory cancer) may be service connected on a presumptive basis as due to exposure to herbicides, if manifested in a Veteran who served in Vietnam during the Vietnam Era. (Nasopharyngeal carcinoma is not listed in § 3.309(e).) 38 U.S.C.A. § 1116; 38 C.F.R. § 3.309(e).

Service connection is warranted for a disability which is aggravated by, proximately due to, or the result of a service-connected disease or injury. 38 C.F.R. § 3.310. The elements of a successful secondary service connection claim are evidence of: A disability for which service connection is sought; a disability that is already service connected; and that the service connected disability caused or aggravated the disability for which service connection is sought.

The Veteran seeks service connection for EBV and nasopharyngeal carcinoma claimed as due to the EBV and/or as due to exposure to Agent Orange. He notes that dysphagia, dry mouth and immune homeostasis are due to chemotherapy he received for nasopharyngeal cancer (and, therefore, warrant secondary service connection). At the June 2015 videoconference hearing before the undersigned, he testified that he had flu-like symptoms when he was in Vietnam. He states this suggests he was exposed to a strain of the EBV that he could only have acquired in Vietnam, and that this is associated with nasopharyngeal cancer. He also states that nasopharyngeal cancer should be considered a respiratory cancer, not a throat cancer, and thus is presumptively associated to Agent Orange. 

As noted above, in view of conflicting evidence regarding the etiology of the Veteran's nasopharyngeal carcinoma (and because many of his assertions of causality involve medical questions unresolved by medical evidence in the record), the Board referred his records to an infectious disease specialist with the VHA. Based on an extensive review of the record, the consulting expert concluded that while the Veteran could have acquired EBV in Vietnam, it was "much more likely" that it was acquired in the United States since virtually the entire adult population in the U.S. has been infected. Thus, an etiological relationship between EBV and service in Vietnam is not established. Since the Veteran also argues that the naqsopharyngeal carcinoma is due to his exposure to Agent Orange when he was in Vietnam, the VHA expert noted that nasopharyngeal cancers have been associated with smoking, and the record establishes that the Veteran has an extensive past history of smoking. 

Evaluation of the probative value of a medical opinion is based on the medical expert's personal examination of the patient, the examiner's knowledge and skill in analyzing the data, and the medical conclusions reached. The credibility and weight to be attached to such opinions are within the providence of the Board as adjudicators. Guerrieri v. Brown, 4 Vet. App. 467, 470-71 (1993). Greater weight may be placed on one physician's opinion over another's depending on factors such as reasoning employed by the physicians and the extent to which they reviewed prior clinical records and other evidence. Gabrielson v. Brown, 7 Vet. App. 36, 40 (1994). 

The Veteran has essentially maintained that nasopharyngeal cancer should be considered a presumptive respiratory cancer. VA has specifically identified which cancers are respiratory cancers associated with exposure to Agent Orange and the listing does not include cancer of the nasopharynx. That omission was intentional. 75 Fed. Reg. 81332-3 (December 27, 2010). VA has specifically determined that nasopharyngeal cancer is not associated with exposure to herbicide agent for purposes of the presumption. See Health Effects Not Associated With Exposure to Certain Herbicide Agents, 75 Fed. Reg. 32,540 -53 (Jun. 8, 2010); 72 Fed. Reg. 32,395-407 (June 12, 2007) (emphasis added). Taking account of the available evidence and the analyses of National Academy of Sciences, the Secretary has found that the credible evidence against an association between herbicide exposure and cancer of the pharynx and nasal cavity outweighs the credible evidence for such an association, such that he has determined that a positive association does not exist. This determination was based on thorough and substantive medical research, and constitutes very strong evidence against finding presumptive service connection for nasopharyngeal cancer as a cancer due to exposure to herbicides. VA has limited the respiratory cancers to those areas that are specifically listed under 38 C.F.R. § 3.309(e), which do not include nasopharyngeal cancer.

The Board finds the VHA expert's opinion to be the most probative evidence in the record regarding the nature and etiology of the Veteran's nasopharyngeal carcinoma. The examiner expressed familiarity with the entire record and the negative nexus offered includes rationale that cites to supporting factual data, including that only a correlation, not causation between the EBV and nasopharyngeal cancer had been established and that the Veteran had a history of smoking. Therefore, this opinion merits greater probative value than the June 2015 statements by the Veteran's treating VA physician. Notably, that physician did not provide any explanation for his conclusions. Since there is no basis for an award of service connection for nasopharyngeal carcinoma, the remaining claims must also be denied as the threshold requirement in any claim seeking secondary service connection is that the disease that is claimed to have caused or aggravated a disability for which service connection is sought must itself be service-connected. 38 C.F.R. § 3.310. Accordingly, the Board finds that the preponderance of the evidence is against the claims of service connection for EBV, nasopharyngeal carcinoma, dysphagia, dry mouth and immune homeostasis, and that the appeal in these matters must be denied.

ORDER

Service connection for EBV, nasopharyngeal carcinoma, dysphagia, dry mouth and immune homeostasis is denied.

REMAND

The Veteran seeks service connection for neuropathy of the feet (claimed, in part, as due to Agent Orange), and increases in the staged ratings assigned for his bilateral hearing loss. In June 2015, based on a review of the record, a VA physician concluded that no evidence of early onset peripheral neuropathy was found in service or within one year of the Veteran's last date of exposure to Agent Orange. In March 2016, the RO assigned a 60 percent rating for the Veteran's service-connected bilateral hearing loss. The record does not show that a supplemental statement of the case (SSOC) was thereafter issued. This constitutes a due process defect, requiring corrective action. 

Accordingly, the case is REMANDED for the following action:

The AOJ should review the record (to specifically include consideration of all evidence added to the record and all actions taken by the AOJ since their most recent SSOC) and readjudicate the claims remaining on appeal,. If either remains denied, the RO should issue an appropriate SSOC, afford the Veteran and his representative opportunity to respond, and return the case to the Board.

The appellant has the right to submit additional evidence and argument on the matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999). These claims must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).
(Please note, this appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c). Expedited handling is requested.)

______________________________________________
GEORGE R. SENYK
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs