Citation Nr: 1829336 
Decision Date: 05/25/18 Archive Date: 06/12/18

DOCKET NO. 08-36 778 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Waco, Texas


THE ISSUES

1. Whether the reduction of the rating for service-connected eczema from 60 percent to 10 percent, effective April 1, 2008, was proper. 

2. Entitlement to a disability rating in excess of 10 percent for eczema.


REPRESENTATION

Appellant represented by: Disabled American Veterans


ATTORNEY FOR THE BOARD

T. Berry, Counsel



INTRODUCTION

The Veteran served on active duty from October 1999 to October 2003.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a January 2008 rating decision by the Department of Veterans Affairs (VA) Regional Office (RO) in Waco Texas. 

In September 2011 and December 2016, the Board remanded the case for additional development. To date, the requested actions have been completed. 


FINDINGS OF FACT

1. In an October 2004 rating decision, service connection for eczema was granted and an initial 60 percent rating was assigned, effective October 11, 2003.

2. In July 2007 rating decision, the RO notified the Veteran of a proposal to reduce the disability rating for her service-connected eczema from 60 percent to 10 percent, as well as a 60 day period for the submission of evidence and the right to request a predetermination hearing within 30 days. 

3. In a January 2008 rating decision, the RO effectuated the reduction of the disability rating for the Veteran's service-connected eczema from 60 percent to 10 percent, effective April 1, 2008.

4. At the time of the reduction, the 60 percent rating for service-connected eczema was in effect for less than five years.

5. The evidence at the time of the reduction demonstrated that the Veteran's eczema had materially improved, to include improvement in the ability to function under the ordinary conditions of life and work.

6. The Veteran's eczema is characterized by, at its worst, total percentage of the exposed area at 2 percent, and the total body surface area involved at 5 percent. 

7. At no point during the appeal is there evidence of debilitating episodes, scars, or disfigurement of the head, face, or neck; or evidence of record suggesting the required use of intermittent systemic therapy such as corticosteroids or other immunosuppressive drugs. 


CONCLUSIONS OF LAW

1. The reduction in the rating from 60 percent to 10 percent for service-connected eczema, effective April 1, 2008, was proper. 38 U.S.C. §§ 1155, 5107 (West 2012); 38 C.F.R. §§ 3.105, 3.344, 4.1-4.14, 4.104, Diagnostic Codes 7800- 7806 (2007).

2. The criteria are not met for a rating in excess of 10 percent for eczema. 38 U.S.C. §§ 1155, 5107 (West 2012); 38 C.F.R. §§ 4.1, 4.7, 4.114, 4.118, Diagnostic Codes 7800-7806 (2007).


REASONS AND BASES FOR FINDINGS AND CONCLUSION

Rating Reduction

In a rating reduction case, VA has the burden of establishing that the disability has improved. It is well established that VA cannot reduce a veteran's disability evaluation without first finding that the service-connected disability has improved to the point that the veteran is now better able to function under the ordinary conditions of life and work. See Murphy v. Shinseki, 26 Vet. App. 510, 517 (2014); see also Faust v. West, 13 Vet. App. 342, 349 (2000); Brown v. Brown, 5 Vet. App. 413, 421 (1993).

By way of background, in an October 2004 rating decision, service connection for eczema was granted and an initial 60 percent rating was assigned, effective from October 11, 2003. In July 2005, the Veteran filed for an increased rating for her skin disability and was notified in a January 2006 rating decision that her currently assigned 60 percent rating would be continued. In a March 2007 rating decision, in response to evidence received concerning this claim, the RO notified the Veteran her 60 percent rating would continue. A July 2007 rating decision notified the Veteran of a proposal to reduce the disability rating for her service-connected eczema from 60 percent to 10 percent. In a January 2008 rating decision, the RO effectuated the reduction of the disability rating for the Veteran's service-connected eczema from 60 percent to 10 percent, from April 1, 2008. The Veteran subsequently appealed with respect to the propriety of the reduction.

The RO assigned the initial 60 percent rating for the Veteran's eczema based on a February 2004 VA examination that found the Veteran suffers from constant itching and crusting of areas that are exposed to the sun, including the face and the hands. The Veteran was reported as receiving topical medication only for the skin condition. Upon physical examination, the examiner noted signs of skin disease on the bilateral cheeks, with abnormal texture of more than six square inches. There was no evidence of ulceration, exfoliation, crusting, tissue loss, induration, inflexibility, hypopigmentation, hyperpigmentation or limitation of motion. The skin lesion coverage of the exposed area was 65 percent. The skin lesion coverage relative to the whole body was 10 percent. The examiner determined the skin lesions were not associated with a systemic disease, and did not manifest in connection with a nervous condition. There was no functional impairment resulting from the above condition. 

Thereafter, an August 2005 VA examination noted the eczema was associated with some itching, crusting, and maculopapular lesions involving the arms, wrist, and buttocks. The Veteran also used various topical medications and other over-the-counter soaps without relief. Upon physical examination, the examiner noted the presence of eczematous lesions over the buttocks, arms, and face without ulceration, exfoliation, or crusting. The lesions of exposed area was 10 percent and lesions to whole body was 5 percent. There was no tissue loss, induration, inflexibility, pigmentary changes, abnormal texture, or limitation of motion. Similarly, there was no association of systemic, disease, or nervous condition. 
On the basis of this August 2005 VA examination and relevant treatment records that are repetitive of the findings noted on examination, the RO continued the 60 percent rating in January 2006 and March 2007 rating decisions. 

In May 2007, the Veteran was again examined by VA for her eczema. At that time, she reported a rash on the arms, back, and scalp, characterized by lesions that itch and burn. The Veteran reported that the lesions appear on and off, and usually began as papules, and ooze puss, leaving behind a scar. She reported that she uses topical gels. Upon physical examination, the examiner noted scattered, hypopigmented papules on the bilateral upper outer arms, upper back, and breast. There was also xerosis of the skin. The examiner ultimately determined the total percentage of the exposed area is 2 percent, and the total body surface area involved is 5 percent. At the time of this examination, the Veteran was not on any medications. Finally, the examiner stated the Veteran presented with itching, dry skin with xerosis that is exacerbated by hypothyroidism. 

Based on the foregoing findings of the May 2007 VA examination, the RO proposed to reduce the Veteran's eczema from 60 percent to 10 percent in the July 2007 rating decision. The Veteran opposed the reduction and provided testimony at a hearing in January 2008, arguing against the reduction. Nevertheless, such reduction was effectuated in the January 2008 rating decision as of April 1, 2008. 

Thereafter, the Veteran appealed with regard to the propriety of the reduction and alleged that she was entitled to the 60 percent rating. 

Since the reduction, the Veteran has undergone additional VA examinations in August 2013 and again in September 2017. 

At the August 2013 VA examination, the Veteran reported that the rash on her face was worsening even with use of body wash, shampoo, and face cream. The examiner determined that the Veteran did not present with any lesions concurrent with eczema, but that she did have acne-type lesions on her face. The Veteran reported that she used several different prescription creams and lotions, but could not recall the name of the medications. The examiner found that the Veteran's skin disorder was treated with oral or topical medications for greater than six weeks, but did not provide additional details regarding the medications. Finally, there were no debilitating episodes as a result of the service-connected eczema. 

The September 2017 Disability Benefits Questionnaire (DBQ) noted current diagnoses of dermatitis, acne, and alopecia. The examiner noted there was no disfigurement of the head, face, or neck. As for medication, the Veteran reported the use of over the counter medications, including Benadryl and another illegible medication. There was no evidence the Veteran suffered from debilitating episodes in the previous 12 months. As for the total area of the body and the total area exposed, the examiner determined it was less than 5 percent for dermatitis. Further, the acne affected less than 40 percent of the Veteran's face and neck.

In an addendum opinion, also dated the same day as the DBQ was conducted, the examiner noted that there were no affected areas of involvement pertaining to the eczema. However, the Veteran did appear to have new onset contact dermatitis of the neck area with less than 3 person of total body surface area and less than 2 percent of exposed body surface area. There was no functional impairment and no scarring as a result of her eczema, and she has not been on any topical or oral prescription medications for this condition in the past year as there are no active lesions. Further, it was determined that the dermatitis was likely not related to the eczema diagnosis as the examiner suspected the Veteran had allergic contact dermatitis at the time of the examination. 

VA treatment records show that the Veteran has consistently sought treatment for various skin disabilities throughout the course of this appeal. However, the treatment records do not show any additional objective findings that have not been discussed in the VA examinations of record. For the sake of brevity, the findings in the treatment records will not be recounted as they do not provide a different disability picture than the evidence already establishes. 

Where the reduction in evaluation of a service-connected disability is considered warranted and the lower evaluation would result in a reduction or discontinuance of compensation payments currently being made, a rating proposing the reduction or discontinuance will be prepared setting forth all material facts and reasons. The beneficiary will be notified at his or her latest address of record of the contemplated action and furnished detailed reasons therefore and given 60 days for the presentation of additional evidence to show that compensation payments should be continued at their present level. 

Unless otherwise provided, if additional evidence is not received within that period, final rating action will be taken, and the award will be reduced or discontinued effective the last day of the month in which a 60-day period from the date of notice to the beneficiary of the final rating action expires. 38 C.F.R. § 3.105 (e) (2017); see also 38 U.S.C. § 5112 (b)(6).

The Veteran was sent a notice letter of the proposed reduction dated August 2007. Such communication fully detailed the proposal to reduce her disability evaluation and apprised her that she had 60 days to submit additional evidence to show that a reduction was not appropriate. Evidence was submitted and considered, to include her testimony during a hearing at the RO on the proposed reduction, and the reduction was implemented in a January 2008 rating decision, effective April 1, 2008. Given the chronology of the process described above, the Board finds that the RO complied with the due process procedures required under 38 C.F.R. § 3.105 (e) for reducing the Veteran's disability rating by notifying her of her rights and giving her an opportunity for a hearing and time to respond.

The Board must next address whether the reduction was warranted. A Veteran's disability rating may not be reduced unless the evidence demonstrates that an improvement in the disability has occurred. See 38 U.S.C. § 1155. Additionally, in certain rating reduction cases, the recipients of VA benefits are to be afforded greater protections. These additional protections apply in cases involving ratings that have continued for long periods of time at the same level (that is, five years or more); for ratings in effect for fewer than five years, reduction is warranted if the evidence shows improvement of the condition. See 38 C.F.R. § 3.344 (2017).

Disability ratings are determined by applying the criteria set forth in the VA Schedule for Rating Disabilities (rating schedule), found in 38 C.F.R. Part 4. Disability ratings are intended to compensate impairment in earning capacity due to a service-connected disorder. 38 U.S.C. § 1155 (2012). Evaluation of a service-connected disorder requires a review of a veteran's entire medical history regarding that disorder. 38 C.F.R. §§ 4.1, 4.2 (2017); Schafrath v. Derwinski, 1 Vet. App. 589 (1991). When a reasonable doubt arises regarding the degree of disability, such doubt will be resolved in favor of the claimant. 38 C.F.R. § 4.3 (2017). If there is a question as to which evaluation to apply to a veteran's disability, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7 (2017). A rating for hearing loss is determined by a mechanical application of the rating schedule to the numeric designations assigned based on audiometric test results. Lendenmann v. Prinicipi, 3 Vet. App. 345 (1992).

As an initial matter, the Board notes that while the Veteran's claim was pending, new rating criteria for evaluating skin disabilities became effective on October 23, 2008; these regulations apply only to claims filed on or after October 23, 2008, or when requested by the veteran. In this case, the Veteran submitted her claim prior to 2008, and has not requested such consideration. Therefore, the Board will consider the claim under the criteria in effect prior to October 23, 2008. The Veteran's disability is characterized as eczema and rated pursuant to Diagnostic Code 7806 for dermatitis or eczema. 

Under the criteria in effect prior to October 23, 2008, dermatitis or eczema is to be rated under either the criteria under Diagnostic Code 7806 or to be rated as disfigurement of the head, face, or neck (Diagnostic Code 7800) or scars (Diagnostic Codes 7801, 7802, 7803, 7804, or 7805), depending upon the predominant disability. 

Diagnostic Code 7806 provided that dermatitis or eczema that involves less than 5 percent of the entire body or less than 5 percent of exposed areas affected, and; no more than topical therapy is required during the past 12-month period, is rated noncompensably (0 percent) disabling. Dermatitis or eczema that involves at least 5 percent, but less than 20 percent, of the entire body, or at least 5 percent, but less than 20 percent, of exposed areas affected, or; intermittent systemic therapy such as corticosteroids or other immunosuppressive drugs required for a total duration of less than six weeks during the past 12-month period, is rated 10 percent disabling. Dermatitis or eczema that involves 20 to 40 percent of the entire body or 20 to 40 percent of exposed areas affected, or; systemic therapy such as corticosteroids or other immunosuppressive drugs required for a total duration of six weeks or more, but not constantly, during the past 12-month period, is rated 30 percent disabling. Dermatitis or eczema that involves more than 40 percent of the entire body or more than 40 percent of exposed areas affected, or; constant or near-constant systemic therapy such as corticosteroids or other immunosuppressive drugs required during the past 12-month period, is rated 60 percent disabling. 38 C.F.R. § 4.118.

In addition, Diagnostic Code 7800 provided ratings for disfigurement of the head, face, or neck. Note (1) to Diagnostic Code 7800 provides that the 8 characteristics of disfigurement, for purposes of rating under 38 C.F.R. § 4.118, are: Scar is 5 or more inches (13 or more cm.) in length. Scar is at least one-quarter inch (0.6 cm.) wide at the widest part. Surface contour of scar is elevated or depressed on palpation. Scar is adherent to underlying tissue. Skin is hypo-or hyper-pigmented in an area exceeding six square inches (39 sq. cm.). Skin texture is abnormal (irregular, atrophic, shiny, scaly, etc.) in an area exceeding six square inches (39 sq. cm.). Underlying soft tissue is missing in an area exceeding six square inches (39 sq. cm.). Skin is indurated and inflexible in an area exceeding six square inches (39 sq. cm.).

Diagnostic Code 7800 provided that a skin disorder with one characteristic of disfigurement of the head, face, or neck is rated 10 percent disabling. A skin disorder of the head, face, or neck with visible or palpable tissue loss and either gross distortion or asymmetry of one feature or paired set of features (nose, chin, forehead, eyes (including eyelids), ears (auricles), cheeks, lips), or; with two or three characteristics of disfigurement, is rated 30 percent disabling. A skin disorder of the head, face, or neck with visible or palpable tissue loss and either gross distortion or asymmetry of two features or paired sets of features (nose, chin, forehead, eyes (including eyelids), ears (auricles), cheeks, lips), or; with four or five characteristics of disfigurement, is rated 50 percent disabling. A skin disorder of the head, face, or neck with visible or palpable tissue loss and either gross distortion or asymmetry of three or more features or paired sets of features (nose, chin, forehead, eyes (including eyelids), ears (auricles), cheeks, lips), or; with six or more characteristics of disfigurement, is rated 80 percent disabling. 

Note (2) to Diagnostic Code 7800 provided that tissue loss of the auricle is to be rated under Diagnostic Code 6207 (loss of auricle), and anatomical loss of the eye under Diagnostic Code 6061 (anatomical loss of both eyes) or Diagnostic Code 6063 (anatomical loss of one eye), as appropriate. Note (3) provides that unretouched color photographs are to be taken into consideration when rating under these criteria. 38 C.F.R. § 4.118. 

Diagnostic Code 7803 provided a 10 percent rating for superficial unstable scars. Note (1) to Diagnostic Code 7803 provided that an unstable scar is one where, for any reason, there is frequent loss of covering of skin over the scar. Note (2) provided that a superficial scar is one not associated with underlying soft tissue damage. 38 C.F.R. § 4.118. 

Diagnostic Code 7804 provided a 10 percent rating for superficial scars that are painful on examination. Note (1) to Diagnostic Code 7804 provided that a superficial scar is one not associated with underlying soft tissue damage. Note (2) provided that a 10-percent rating will be assigned for a scar on the tip of a finger or toe even though amputation of the part would not warrant a compensable rating. 38 C.F.R. § 4.118. Diagnostic Code 7804 also directs the rater to see 38 C.F.R. § 4.68 (amputation rule). 38 C.F.R. § 4.118.

Diagnostic Code 7805 provided that other scars are to be rated on limitation of function of affected part. 38 C.F.R. § 4.118.

The Veteran's initial 60 percent evaluation was in effect for less than five years. As noted above, additional procedural safeguards are set forth in 38 C.F.R. § 3.344 for ratings in effect for five years or more. These protections are not for application in this case as the Veteran's 60 percent rating was in effect for less than five years.

In general, the RO's reduction of a rating must have been supported by the evidence on file at the time of the reduction. Pertinent post-reduction evidence favorable to restoring the rating, however, also must be considered. In addressing whether improvement is shown, the comparison point generally is the last examination on which the rating at issue was assigned or continued. See Hohol v. Derwinski, 2 Vet. App. 169 (1992).

Based on the foregoing findings of the May 2007 VA examination, the RO proposed to reduce the Veteran's eczema from 60 percent to 10 percent based on the fact the total percentage of the exposed area was 2 percent, and the total body surface area involved was 5 percent. 

The evidence of record since the May 2007 VA examination does not show evidence of dermatitis or eczema that involves 20 to 40 percent of the entire body or 20 to 40 percent of exposed areas affected, or; systemic therapy such as corticosteroids or other immunosuppressive drugs. Further, there is no evidence she suffers from scarring or disfigurement that would warrant assigning a higher rating under a different diagnostic code. 

Based on the foregoing, the Board concludes that the RO's reduction in rating from 60 to 10 percent was proper as the evidence at the time of the reduction demonstrated that the Veteran's eczema had materially improved. Furthermore, evidence received subsequent to the reduction likewise shows that such improvement has been maintained. 

In reaching the above conclusions, the Board has not overlooked the Veteran's statements with regard to the severity of her skin disability. In this regard, the Veteran is competent to report on factual matters of which she had firsthand knowledge, e.g., experiencing the outbreaks on her skin, use of medications, and the psychical manifestations of her skin disability. See Washington v. Nicholson, 19 Vet. App. 362, 368 (2005). The Veteran has provided lay evidence through written statements and oral statements provided during her VA examinations. She is competent to provide such statements, and the Board finds that the Veteran's statements are credible. The Veteran's reported symptomatology has been noted in the rating decisions above, and the Board has considered the Veteran's reports. With respect to the Rating Schedule, the criteria set forth therein generally require medical expertise where the types of findings required are not readily observable by a lay person. Therefore, the objective medical findings provided by the Veteran's VA examination reports have been accorded greater probative weight. See Guerrieri v. Brown, 4 Vet. App. 467, 470-71 (1993) ("[t]he probative value of medical opinion evidence is based on the medical expert's personal examination of the patient, the physician's knowledge and skill in analyzing the data, and the medical conclusion that the physician reaches . . . the credibility and weight to be attached to these opinions [are] within the province of the adjudicator.").

For the reasons set forth above, the Board finds that the reduction in the rating from 60 percent to 10 percent for service-connected eczema, effective April 1, 2008, was proper. Accordingly, the preponderance of the evidence is against the restoration of the 60 percent rating for eczema.

Increased Rating

As already explained, in July 2005, the Veteran filed for an increased rating for her skin disability and was notified in a January 2006 rating decision that her currently assigned 60 percent rating would be continued. In a March 2007 rating decision, in response to evidence received concerning this claim, the RO notified the Veteran her 60 percent rating would continue. A July 2007 rating decision notified the Veteran of a proposal to reduce the disability rating for her service-connected eczema from 60 percent to 10 percent. In a January 2008 rating decision, the RO effectuated the reduction of the disability rating for the Veteran's service-connected eczema from 60 percent to 10 percent, from April 1, 2008, and the Board has determined that this reduction was in fact proper. Therefore, having determined the restoration of the 60 percent rating is not warranted, the Board must now determine whether she is entitled to a rating higher than 10 percent. 

Where, as here, an increase in an existing disability rating based on established entitlement to compensation is at issue, the present level of disability is the primary concern. Francisco v. Brown, 7 Vet. App. 55, 58 (1994). However, a rather recent decision of the Court held that, in determining the present level of a disability for any increased evaluation claim, the Board must consider the application of staged ratings. Hart v. Mansfield, 21 Vet. App. 505 (2007). In other words, where the evidence contains factual findings that demonstrate distinct time periods in which the service-connected disability exhibited diverse symptoms meeting the criteria for different ratings during the course of the appeal, the assignment of staged ratings would be necessary. The relevant temporal focus for adjudicating the level of disability of an increased rating claim is from the time period one year before the claim was filed, until VA makes a final decision on the claim. Hart, supra. See also 38 U.S.C.A. § 5110(b)(2); 38 C.F.R. § 3.400(o)(2). Here, as the evidence initiating this appeal dates from February 2007, the relevant temporal focus is from February 2006. For the reasons and bases set forth below, however, the Board finds no grounds to grant a higher rating for this disability.

The Board has already discussed the relevant legal authority governing the rating criteria for this case above in discussing the propriety of the reduction. For the sake of brevity, the Board will not repeat the regulations again in the context of the claim for a rating in excess of 10 percent for eczema and will proceed to a discussion on the merits. 

Here, the objective evidence of record does not demonstration the Veteran is entitled to a rating in excess of 10 percent for eczema. Pursuant to Diagnostic Code 7806, the Veteran's eczema has, at its worst, note the use of various topical medications and other over-the-counter soaps without relief, with lesions covering the exposed area of 10 percent and lesions to whole body of 5 percent. See August 2005 VA examination. 

Thereafter, the May 2007 VA examination found the Veteran used topical gels, but no medications, with the total percentage of the exposed area was 2 percent, and the total body surface area involved was 5 percent. The August 2013 examination found no evidence of lesions covering the body. Finally, the September 2017 DBQ and addendum determined the total area of the body and the total area exposed were less than 5 percent for dermatitis.

At no point during the appeal is there evidence of debilitating episodes, scars, or disfigurement of the head, face, or neck. As for medication, the evidence of record does not show the Veteran required the use of intermittent systemic therapy such as corticosteroids or other immunosuppressive drugs. Therefore, a higher rating under any other diagnostic code for rating skin disabilities is not warranted. See Diagnostic Codes 7800-7805. 

In reaching the above conclusions, the Board has not overlooked the Veteran's statements with regard to the severity of her skin disability. In this regard, the Veteran is competent to report on factual matters of which she had firsthand knowledge, e.g., experiencing lesions, itching, or other readily observable symptomology. See Washington v. Nicholson, 19 Vet. App. 362, 368 (2005). The Veteran has provided lay evidence through written statements and oral statements provided during her VA examinations. She is competent to provide such statements, and the Board finds that the Veteran's statements are credible. The Veteran's reported symptomatology has been noted in the rating decisions above, and the Board has considered the Veteran's reports in evaluating her assigned rating. Nevertheless, the objective medical findings provided by the Veteran's VA examination reports have been accorded greater probative weight. See Guerrieri v. Brown, 4 Vet. App. 467, 470-71 (1993) ("[t]he probative value of medical opinion evidence is based on the medical expert's personal examination of the patient, the physician's knowledge and skill in analyzing the data, and the medical conclusion that the physician reaches . . . the credibility and weight to be attached to these opinions [are] within the province of the adjudicator.").

After a review of the entire record, the Board finds that the preponderance of the evidence is against the award of a disability rating in excess of 10 percent for eczema any point during the appeals period. As a preponderance of the evidence is against the award of an increased rating, the benefit of the doubt doctrine is not applicable in the instant appeal. See 38 U.S.C.A. § 5107(b); Ortiz v. Principi, 274 F.3d 1361 (Fed. Cir. 2001); Gilbert v. Derwinski, 1 Vet. App. 49, 55-57 (1991).



ORDER

The reduction in the rating from 60 percent to 10 percent for service-connected eczema, effective April 1, 2008, was proper; the appeal is denied. 

Entitlement to a disability rating in excess of 10 percent for eczema is denied. 



______________________________________________
ROBERT C. SCHARNBERGER
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs