﻿Citation Nr: AXXXXXXXX
Decision Date: 01/31/20 Archive Date: 01/31/20

DOCKET NO. 190617-11985
DATE: January 31, 2020

ORDER

Entitlement to service connection for cephalgia is granted.

Entitlement to service connection for respiratory insufficiency is denied.

Entitlement to service connection for sleep apnea is denied.

Entitlement to service connection for restless leg syndrome (RLS) is granted.

Entitlement to a rating of 50 percent, but no higher, for post-traumatic stress disorder (PTSD) for the period from May 3, 2019 to November 12, 2019 is granted.

Entitlement to a rating in excess of 50 percent for PTSD for the period from January 22, 2019 to November 12, 2019 is denied.

REMANDED

Entitlement to service connection for a nasal disability, to include chronic sinusitis and allergic rhinitis is remanded.

FINDINGS OF FACT

1. The Veteran’s cephalgia had its onset in service and has persisted since service.

2. The preponderance of the competent evidence indicates that the Veteran does not have a current respiratory disability. 

3. The current evidence of record does not show that the Veteran has a confirmed diagnosis of sleep apnea.

4. The Veteran’s RLS had its onset in service and has persisted since service. 

5. During the entire period on appeal, the Veteran’s PTSD has been characterized by depression, anxiety, chronic sleep impairment, daily fatigue, impaired concentration, mild memory impairment, disturbances of motivation and mood, and problems with work and social relationships, as well as reduced impulse control and irritability with angry outbursts.

CONCLUSIONS OF LAW

1. The criteria for service connection for cephalgia have been met. 38 U.S.C. §§ 1110, 5107 (2012); 38 C.F.R. §§ 3.102, 3.303(d) (2018).

2. The criteria for service connection for respiratory insufficiency have not been met. 38 U.S.C. §§ 1110, 5107 (2012); 38 C.F.R. §§ 3.102, 3.303 (2018).

3. The criteria for service connection for sleep apnea have not been met. 38 U.S.C. §§ 1110, 5107 (2012); 38 C.F.R. §§ 3.102, 3.303 (2018).

4. The criteria for service connection for restless leg syndrome have been met. 38 U.S.C. §§ 1110, 5107 (2012); 38 C.F.R. §§ 3.102, 3.303 (2018).

5. The criteria for a 50 percent rating for PTSD for the period from May 3, 2019 to November 12, 2019 have been met. 38 U.S.C. §§ 1155, 5107 (2012); 38 C.F.R. §§ 4.1, 4.3, 4.7, 4.126, 4.130, Diagnostic Code 9411 (2018).

6. The criteria for a rating in excess of 50 percent for PTSD for the period from January 22, 2019 to November 12, 2019 have not been met. 38 U.S.C. §§ 1155, 5107 (2012); 38 C.F.R. §§ 4.1, 4.3, 4.7, 4.126, 4.130, Diagnostic Code 9411 (2018).

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran served on active duty from May 1997 to September 1997 and from February 2003 to May 2004, with additional periods of Reserve service. This matter came before the Board of Veterans Appeals (Board) on appeal from a May 2019 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO). The Veteran timely appealed this rating decision to the Board in June 2019 and requested Direct Review of the evidence considered by the Agency of Original Jurisdiction (AOJ). 

The record contains evidence of multiple nasal diagnoses; therefore, the Board will broadly construe the issue of service connection for sinusitis as a claim for service connection for a nasal disability, to include sinusitis and allergic rhinitis. Clemons v. Shinseki, 23 Vet. App. 1, 6 (2009).

Evidence was added to the claim file during a period of time when new evidence was not allowed, including a September 2019 sleep study and a November 2019 VA psychiatric examination. Therefore, the Board may not consider this evidence. 38 C.F.R. § 20.300. The Veteran may file a Supplemental Claim and submit or identify this evidence. 38 C.F.R. § 3.2501. If the evidence is new and relevant, VA will issue another decision on the claim, considering the new evidence in addition to the evidence previously considered. Id. Specific instructions for filing a Supplemental Claim are included with this decision.

Service Connection

Establishing service connection generally requires medical or, in certain circumstances, lay evidence of (1) a current disability; (2) an in-service incurrence or aggravation of a disease or injury; and (3) a nexus between the claimed in-service disease or injury and the present disability). See Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009); Hickson v. West, 12 Vet. App. 247, 253 (1999); 38 C.F.R. § 3.303(a). Service connection may be established for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes the disease was incurred in service. 38 C.F.R. § 3.303(d).

VA is required to give due consideration to all pertinent medical and lay evidence in evaluating a claim for disability benefits. 38 U.S.C. § 1154(a). Lay testimony is competent to prove that a claimant exhibited certain lay-observable symptoms and the time that those symptoms appeared. Layno v. Brown, 6 Vet. App. 465, 470 (1994). Lay evidence cannot be determined to be not credible merely because it is unaccompanied by contemporaneous medical evidence. Buchanan v. Nicholson, 451 F.3d 1331, 1336–37 (Fed. Cir. 2006).

When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Secretary shall give the benefit of the doubt to the claimant. 38 U.S.C. § 5107 (2012); see also Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990). For benefits to be denied, “the preponderance of the evidence must be against the claim.” Id. at 54.

1. Entitlement to service connection for cephalgia

The Veteran contends that he is entitled to service connection for cephalgia. The Board concludes that the Veteran has a current diagnosis of cephalgia that began during active service and that service connection is therefore warranted. 38 C.F.R. § 3.303(d).

July 2011 VA treatment record note a history of headaches.

An April 2019 private examination diagnosed chronic headaches and found that they were likely directly related to active service. As a rationale, the provider noted the Veteran’s reports of onset during deployment to Southwest Asia.

A May 2019 VA examination found that headaches were not likely due to an undiagnosed illness as they were clinically diagnosed and stated that they were therefore not likely due to an exposure in Southwest Asia. The examiner opined that the Veteran had multiple underlying conditions that could be related to headaches, including his PTSD. The examiner did not offer an opinion regarding either whether the Veteran’s cephalgia had its onset in service. The Board also finds that the examiner’s rationale is inadequate regarding direct service connection, as it lacks a true opinion regarding etiology and is based solely upon the fact that cephalgia does not constitute an undiagnosed illness. The Board therefore accords the etiological opinion no probative weight. 

At the outset, the Board finds the private opinion adequate for appellate review. There is no evidence that the private provider was not competent or credible, and as the opinion is based on the Veteran’s statements, in-person examination and the examiner’s observations, the Board finds it is entitled to significant probative weight. Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 302–05 (2008).

The Board therefore finds that the competent evidence of record indicates that the Veteran has cephalgia that had its onset in service and has persisted since service. Both the VA examination and the private examination of record diagnosed a headache disability. As the May 2019 examiner did not offer an opinion regarding onset and the etiological opinion has been found to be inadequate, the only competent opinion of record regarding the onset of the Veteran’s cephalgia is the April 2019 private opinion. As discussed above, the opinion found that cephalgia had its onset in service. The opinion stands uncontradicted by any other competent evidence of record. Service connection is therefore warranted. 

2. Entitlement to service connection for respiratory insufficiency

The Veteran contends that he is entitled to service connection for respiratory insufficiency. The Board concludes that the Veteran does not have a current diagnosed respiratory disability and has not had one at any time during the pendency of the claim or recent to the filing of the claim. Service connection is therefore not warranted. 38 C.F.R. § 3.303(a), (d); Brammer v. Derwinski, 3 Vet. App. 223, 225 (1992).

Service treatment records are silent for treatment or diagnosis of a respiratory disability. An April 2004 medical history report indicated that the Veteran reported coughs at night throughout deployment. An April 2004 examination report noted that the coughs had resolved. 

VA treatment records are silent for diagnosis, complaints or treatment for a respiratory disability. July 2011 VA treatment records noted that respiration was not labored. Additional July 2011 VA treatment records noted that the Veteran denied cough, shortness of breath and dyspnea.

An April 2019 private examination diagnosed respiratory insufficiency, stating that the volume of air on expiratory effort was compromised with wheezing. The provider stated that the Veteran had poor aerobic capacity due to a progressive condition that had its onset during deployment. 

A May 2019 VA examination found no evidence of a respiratory disability. The examiner noted a history of dyspnea, unspecified. The provider noted the Veteran’s reports of dyspnea with exertion, beginning in Iraq in 2003, along with post-nasal drip and cough. The provider found that no prior pulmonary diagnosis had been established and no specific disorder could be established upon examination. Pulmonary Function Testing (PFT) was performed and the results were normal. The examiner noted the private opinion but found that there was no evidence of respiratory insufficiency, COPD, asthma, a cardiac disability or another pulmonary disability. In particular, the examiner opined that May 2019 PFT showed no evidence of respiratory insufficiency. Regarding the Veteran’s reports of dyspnea, the examiner noted that obesity and de-conditioning are among the 5 most common causes of dyspnea, and that the Veteran was both obese and that his diagnoses of alcohol disorder and chronic fatigue syndrome can both reflect and cause de-conditioning. 

When there are conflicting statements or opinions from medical professionals, it is within the Board’s province to weigh the probative value of those opinions. See Guerrieri v. Brown, 4 Vet. App. 467, 470 (1993). In determining the weight assigned to this evidence, the Board looks at factors such as the health care provider’s knowledge and skill in analyzing the medical data. See Id. at 470-471. The Board may give greater probative weight to one examiner’s opinion over another’s based on its reasoning and whether the examiner reviewed prior clinical records and other pertinent evidence. Gabrielson v. Brown, 7 Vet. App. 36 (1994); see also Prejean v. West, 13 Vet. App. 444, 448-49 (2000) (factors for assessing the probative value of a medical opinion include the thoroughness and detail of the opinion). 

In this case, there is a conflicting evidence regarding whether the Veteran has a current respiratory disability. The Board notes that the April 2019 private examination report contains no indication that the examiner either reviewed the Veteran’s medical records or conducted objective respiratory tests such as PFTs. Therefore, while the provider states that there was compromised air volume and poor aerobic capacity, there is no indication in the report of the basis of these conclusions. The Board also notes that the April 2019 examination was conducted by a chiropractor, the private chiropractor did not identify expertise in evaluating respiratory symptoms, and work as a chiropractor does not typically involve expertise in evaluating or treating respiratory disabilities. 

In contrast, the May 2019 VA examination was conducted by a medical doctor and was based upon in-person examination, review of medical records (including the April 2019 examination) and objective testing in the form of current PFTs. The examiner’s conclusion that there was no current respiratory disability was clearly based upon the normal results obtained in the PFTs. 

As the May 2019 VA examination had a clear rationale based upon objective testing, involved review of the Veteran’s medical records and was conducted by a medical doctor, the Board assigns it greater probative weight than the April 2019 private opinion, which did not incorporate objective medical testing, did not indicate that medical records were reviewed, and was conducted by a chiropractor with no identified experience with respiratory disabilities,. As noted above, the May 2019 examiner found that the Veteran did not have a current diagnosed respiratory disability. The Board also notes that this finding is consistent with the VA treatment records showing that the Veteran denied cough, shortness of breath and dyspnea.

The Board therefore finds that the preponderance of the competent evidence of record indicates that the Veteran does not have a current respiratory disability. As with all claims for service-connection, in the absence of proof of a present disability, there can be no valid claim. Brammer v. Derwinski, 3 Vet. App. 223, 225 (1992). Service connection is therefore not warranted. 38 C.F.R. § 3.303.

3. Entitlement to service connection for sleep apnea 

The Veteran contends that he is entitled to service connection for sleep apnea. The Board concludes that the evidence of record currently before the Board does not contain a confirmed diagnosis of sleep apnea. Service connection is therefore not warranted. 38 C.F.R. § 3.303(a), (d); Brammer v. Derwinski, 3 Vet. App. 223, 225 (1992).

The Board notes that, subsequent to the May 2019 rating decision on appeal, the Veteran submitted records from a September 2019 sleep study. However, as the Veteran elected a Direct Review when he submitted his June 2019 appeal to the Board, the Board’s review is limited to the evidence of record at the time of the May 2019 appeal and the September 2019 sleep study therefore cannot be considered herein. 

The Board’s review indicates that service and VA treatment records are silent for diagnosis or treatment of sleep apnea during or after service. The Board also notes that the evidence of record currently before the Board does not contain a sleep study.

An April 2019 private examination noted the Veteran’s history of heavy snoring and cessation of respiratory activity during sleep while on active duty. The examiner diagnosed sleep apnea, stating that a sleep study had been arranged and would be filed as an addendum. 

A May 2019 VA examination found the Veteran’s symptoms were “highly suggestive” of sleep apnea but did not provide a conclusive diagnosis as the Veteran had never had a sleep study. The examiner noted the Veteran’s reports of snoring and waking at night and that a study was recommended in 2012. 

The Board finds that the VA and private examinations are adequate for appellate review. There is no evidence the examiners were not competent or credible, and as the reports are based on the Veteran’s statements, in-person examination and the examiners’ observations, the Board finds them entitled to significant probative weight. Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 302–05 (2008).

However, evidence of record currently before the Board does not contain a sleep study or a confirmed diagnosis of sleep apnea. While the April 2019 private examination diagnosed sleep apnea, this diagnosis was based upon the assumption that it would be confirmed by a subsequent sleep study. The May 2019 examiner similarly found that the Veteran’s symptoms suggested sleep apnea but could not confirm a diagnosis in the absence of a sleep study. 

The Board therefore finds that the medical evidence of record does not contain a current conclusive diagnosis of sleep apnea. While providers have noted probable sleep apnea, this is not equivalent to a conclusive diagnosis. As with all claims for service-connection, in the absence of proof of a present disability, there can be no valid claim. Brammer v. Derwinski, 3 Vet. App. 223, 225 (1992). Therefore, based on the current evidence of record, service connection must be denied. 38 C.F.R. § 3.303.

4. Entitlement to service connection for restless leg syndrome

The Veteran contends that he is entitled to service connection for restless leg syndrome (RLS). The Board concludes that the Veteran has a current diagnosis of RLS that began during active service and that service connection is therefore warranted. 38 C.F.R. § 3.303(d).

An April 2019 private examination diagnosed RLS and found that it was likely directly related to active service. As a rationale, the provider noted the Veteran’s reports of onset during deployment to Southwest Asia and persistence to the present.

A May 2019 VA examination found that there was a clinical diagnosis of RLS but that it was not likely due to an undiagnosed illness as it was a clinically diagnosed condition related to iron stores and alterations in dopamine and was therefore not likely due to exposures on active duty. The examiner did not offer an opinion regarding whether the Veteran’s RLS had its onset in service. The Board also finds that the examiner’s rationale is inadequate regarding direct service connection, as it lacks a true opinion regarding etiology and is based solely upon the fact that RLS does not constitute an undiagnosed illness. The Board therefore accords the etiological opinion no probative weight. 

At the outset, the Board finds the private opinion adequate for appellate review. There is no evidence that the private provider was not competent or credible, and as the opinion is based on the Veteran’s statements, in-person examination and the examiner’s observations, the Board finds it is entitled to significant probative weight. Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 302–05 (2008).

The Board therefore finds that the competent evidence of record indicates that the Veteran has a clinical diagnosis of RLS that had its onset in service and has persisted since service. Both the VA examination and the private examination of record found a clinical diagnosis of RLS. As the May 2019 examiner did not offer an opinion regarding onset and the etiological opinion has been found to be inadequate, the only competent opinion of record regarding the onset of the Veteran’s RLS is the April 2019 private opinion. As discussed above, the opinion found that RLS had its onset in service. The opinion stands uncontradicted by any other competent evidence of record. Service connection is therefore warranted. 

Increased Rating

5. Entitlement to a rating for post-traumatic stress disorder (PTSD) in excess of 50 percent for the period from January 22, 2019 to May 3, 2019, and in excess of 30 percent for the period from May 3, 2019 to November 12, 2019

The Veteran contends that he is entitled to a higher rating for his PTSD. The Veteran has been assigned a staged rating and is currently rated as 50 percent disabling for the period from January 22, 2019 to May 3, 2019, and as 30 percent disabling for the period from May 3, 2019 to November 12, 2019. The Board notes that the Veteran is already rated at 70 percent the period after November 12, 2019, however as that period and the evidence pertaining to the period were not addressed in the May 2019 rating decision on appeal, the Board will limit its analysis to the period from January 22, 2019 to November 12, 2019. As will be discussed in detail below, the Board finds that a uniform rating of 50 percent, but no higher, is warranted for the entire period on appeal. 38 C.F.R. §§ 4.7, 4.130, DC 9411. 

Period from May 3, 2019 to November 12, 2019

Upon review of the evidence, the Board finds that the evidence indicates that for the period from May 3, 2019 to November 12, 2019, the Veteran’s PTSD was characterized by depression, anxiety, chronic sleep impairment, daily fatigue, impaired concentration, mild memory impairment and problems with work and social relationships, as well as reduced impulse control and irritability with angry outbursts. Therefore, a rating of 50 percent, but no higher, is warranted for the period from May 3, 2019 to November 12, 2019. 

Disability ratings are determined by applying the criteria set forth in VA’s Schedule for Rating Disabilities. Individual disabilities are assigned separate diagnostic codes. See U.S.C. §1155; 38 C.F.R. § 4.1. When there is a question as to which of two evaluations applies, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for the rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7.

In evaluating a disability’s severity, it is essential to consider its history. 38 C.F.R. § 4.1; Peyton v. Derwinski, 1 Vet. App. 282 (1991). Where entitlement to compensation has already been established and an increase in the disability rating is at issue, the present level of disability is of primary importance. Francisco v. Brown, 7 Vet. App. 55, 58 (1994). That said, higher evaluations may be assigned for separate periods based on the facts found during the appeal period. See Fenderson v. West, 12 Vet. App. 119, 126 (1999). This practice is known as staged ratings. Id.

Ratings are assigned according to the manifestation of symptoms, but the use of the term “such as” in the General Rating Formula demonstrates that the symptoms after the phrase are not intended to constitute an exhaustive list, but rather are to serve as examples of the type and degree of the symptoms, or their effects, that would justify a rating. Mauerhan v. Principi, 16 Vet. App. 436 (2002). Neither the number of symptoms nor the type of symptoms controls in determining whether the criteria for the next higher rating have been met. It is the effect of the symptoms, rather than the presence of symptoms, pertaining to the criteria for the next higher rating, that is determinative, and the Board must draw fact-based conclusions as to whether those symptoms, and their severity, frequency and duration, have caused the level of occupational and social impairment associated with a given rating. Bankhead v. Shulkin, 29 Vet. App. 10 (2017). The Board notes that the presence of suicidal ideation alone conceivably might cause occupational and social impairment with deficiencies in most areas, consistent with a 70 percent rating. Bankhead, 29 Vet. App. at 19. 

When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, VA shall resolve reasonable doubt in favor of the claimant. 38 U.S.C. § 5107; 39 C.F.R. §§ 3.102, 4.3; Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

For the entire period on appeal, the Veteran has been rated under Diagnostic Code (DC) 9411 for PTSD, which is evaluated under the General Rating Formula for Mental Disorders. Under the DC, the criteria for a 30 percent rating are occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks (although generally functioning satisfactorily, with routine behavior, self-care, and conversation normal), due to such symptoms as: depressed mood, anxiety, suspiciousness, panic attacks (weekly or less often), chronic sleep impairment, mild memory loss (such as forgetting names, directions, recent events).

The criteria for a 50 percent rating are occupational and social impairment with reduced reliability and productivity due to such symptoms as: flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short- and long-term memory (e.g., retention of only highly learned material, forgetting to complete tasks); impaired judgment; impaired abstract thinking; disturbances of motivation and mood; and difficulty in establishing and maintaining effective work and social relationships.

The criteria for a 70 percent rating are occupational and social impairment with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to such symptoms as: suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a work like setting); inability to establish and maintain effective relationships.

The criteria for a 100 percent rating are total occupational and social impairment, due to such symptoms as: gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self of others; intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time or place; memory loss for names of close relatives, own occupation, or own name. 38 C.F.R. § 4.130, DC 9411.

A November 2018 private examination found occupational and social impairment with reduced reliability and productivity. The examiner found symptoms of irritable behavior, hypervigilance, exaggerated startle, problems with concentration, sleep disturbance, anxiety, suspiciousness, mild memory loss, disturbances of motivation/mood, and difficulty with work and social relationships as well as stress. The examiner also noted symptoms of anhedonia, insomnia and appetite loss. The Veteran reported verbal outbursts, aggressive driving and road rage. The Veteran also reported recurrent thoughts of death, though he denied suicidal and homicidal ideation overall. The Veteran also described a pattern of excessive anxiety and worry more days than not, associated with periodic irritability, edginess, fatigue and muscle tension. The examiner found that the Veteran’s impulse control was below normal limits. The examiner found that the Veteran was alert and oriented, with affect normal and stable. 

A May 2019 VA examination found occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks. The examiner found symptoms of irritable behavior and angry outbursts, hypervigilance, exaggerated startle, concentration issues, sleep disturbance, depression, anxiety, suspiciousness, chronic sleep impairment, mild memory loss, and difficulty with work/social relationships. The examiner also found diminished pleasure/interest in most activities, insomnia nearly every day and daily fatigue. The examiner noted that psychiatric testing indicated possible overreporting of symptoms. The examiner found that the Veteran was alert and oriented and neatly dressed, with good hygiene and grooming. Mood was found to be dysphoric, with congruent affect, broad in range and appropriate to topic. The examiner noted normal speech and logical, goal-directed thought, with no reports of delusions, no grossly inappropriate behavior, no obvious concentration impairment, and ability to do activities of daily living without assistance not compromised. The Veteran denied suicidal and homicidal ideation.

The Board finds that the VA and private examinations are adequate for appellate review. There is no evidence that the examiners were not competent or credible, and as the reports are based on the Veteran’s statements, in-person examinations and the examiners’ observations, the Board finds them entitled to significant probative weight. Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 302–05 (2008).

The Board notes that the Veteran has already been granted a 50 percent rating for the period from January 22, 2019 to May 3, 2019 and finds that the Veteran’s symptoms have been essentially consistent throughout the entire period. Both the November 2018 and the May 2019 examinations indicated that the Veteran’s PTSD was characterized by difficulty maintaining work and social relationships, chronic sleep impairment, depression, anxiety, suspiciousness, hypervigilance, exaggerated startle and problems with concentration. The Board particularly notes that both examiners found irritability with angry outbursts, which the November 2018 examiner more fully explained as constituting periodic irritability, edginess, verbal outburst, aggressive findings and road rage. As the May 2019 examiner continued to find essentially the same symptoms, there is no basis to conclude that the Veteran’s symptoms had improved. On the contrary, the consistent findings across the two examinations support the conclusion that the Veteran’s pattern of symptoms persisted. 

The Board finds that the overall severity for the period from May 3, 2019 to November 12, 2019 more closely approximated a 50 percent rating, particularly as the evidence indicates that the Veteran’s patterns of depression and anxiety most days and irritability with angry outbursts persisted, as well as additional symptoms of chronic sleep impairment, fatigue and concentration problems. The Board therefore finds that a 50 percent rating for the period from May 3, 2019 to November 12, 2019 is warranted. 

Rating in excess of 50 percent

Having found that a 50 percent rating is warranted for the period from May 3, 2019 to November 12, 2019, there is now a uniform rating for the entire period on appeal. The Board will now consider whether a rating in excess of 50 percent is warranted at any point during the appeal period. 

The Board finds that the preponderance of the evidence is against an evaluation above 50 percent for the period on appeal. The preponderance of the medical evidence of record does not support the conclusion that the Veteran’s overall disability picture more nearly approximates the frequency, severity, or duration of psychiatric symptoms required for a 70 percent disability evaluation based on occupational and social impairment with deficiencies in most areas. 38 C.F.R. §§ 4.7, 4.130, Diagnostic Code 9411. That is, the preponderance of the competent evidence of record does not show that the Veteran experiences symptoms of or equivalent to suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a work like setting); inability to establish and maintain effective relationships.

The Board finds that the evidence of record indicates that the Veteran’s PTSD has been characterized by depression, anxiety, chronic sleep impairment, impaired concentration, disturbances of motivation and mood and problems with work and social relationships. However, all these symptoms are contemplated by the 50 percent rating already assigned. 

While examiners found irritability with angry outbursts, and the November 2018 examiner found impulse control below normal limits, the record does not contain evidence of the other symptoms associated with a 70 percent rating. Both examiners found normal speech and the May 2019 examiner found logical, goal-directed thought. His grooming and hygiene were found to be good and he was noted to be alert and oriented. While the November 2018 examiner noted thoughts of death, he also noted that the Veteran denied having suicidal ideation. The Veteran again denied suicidal ideation at the May 2019 VA examination. In finding that the Veteran’s current 50 percent rating is justified, the Board contemplates the Mauerhan decision and does not identify the symptoms as a mere exhaustive list, but rather as indicative of the overall complaints associated with the condition throughout the period on appeal. The Board therefore finds that the evidence shows that the Veteran’s overall disability picture disability picture more nearly approximates the severity warranting a 50 percent rating.

The Board has considered the requirement of 38 C.F.R. § 4.3 to resolve any reasonable doubt regarding the level of the Veteran’s disability in his favor. The Board finds that the Veteran’s overall picture more nearly approximates that of a 50 percent disability rating, and his symptoms do not more nearly reflect the frequency, severity, and duration of symptoms associated with the 70 percent rating. A rating in excess of 50 percent is therefore not warranted.

REASONS FOR REMAND

Service connection for a nasal disability, to include chronic sinusitis and allergic rhinitis is remanded.

The issue of entitlement to service connection for sinusitis is remanded to correct a duty to assist error that occurred prior to the May 2019 rating decision on appeal. The Agency of Original Jurisdiction (AOJ) obtained a May 2019 VA examination prior to the May 2019 rating decision on appeal. While the examiner did not find a current disability of sinusitis, the examiner did diagnose allergic rhinitis. The examiner then opined that chronic rhinitis is diagnosable and had a potential explained etiology and was therefore not likely due to exposure in Southwest Asia. The Board finds this rationale inadequate regarding direct service connection, as it lacks a true opinion regarding etiology and is based solely upon the fact that allergic rhinitis is not an undiagnosed illness. The Board notes that the fact that presumptive service connection for an undiagnosed illness is not applicable is not dispositive of the issue of nexus and consideration must still be given to the exposure. Remand for a new examination is therefore required. The examiner should also address the April 2019 private evaluation finding of sinusitis.

The matters are REMANDED for the following action:

Schedule the Veteran for an appropriate VA examination, to determine the etiology of any current nasal disability, to include sinusitis and allergic rhinitis. The examiner should review the file and provide a complete rationale for all opinions expressed. If the examiner does not find a current diagnosis of sinusitis, the examiner should explain why. Such an opinion should address the April 2019 private opinion. 

For any current nasal disability found to be diagnosed, to include sinusitis and allergic rhinitis, the examiner should provide an opinion as to whether it is at least as likely as not (50 percent or greater probability) that any such disability is related to the Veteran’s active service, to include whether it is due to exposures in Southwest Asia. The examiner is advised that the fact that presumptive service connection for an undiagnosed illness may not apply is not dispositive of the issue of nexus and consideration must still be given to the exposure in providing a direct service connection opinion. In providing the opinion, the examiner should consider and discuss any lay statements of record, to include the Veteran’s statements regarding the onset and persistence of his symptoms. 

 

 

E. I. VELEZ

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board A. Arnold, Associate Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential, and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.